H. O. ROBERTSON ET AL. v. C. R. BREEDLOVE ET AL.

(Case No. 1673.)

1. COUNTY BONDS — COMMISSIONERS' COURT — JURISDICTION. — Prior to the act of the legislature of 1884, in view of the uniform policy of the state. which, at the time of the adoption of the constitution of 1876, was clearly against the existence and exercise of an implied power in a county, through its commissioners' court, to issue negotiable county bonds bearing interest for the purpose of raising money to build a court-house and to levy a special tax to pay accruing interest and provide a sinking fund for their redemption, such a power could not be exercised. When such a power was sought to be exercised, by issuing bonds redeemable only at fixed periods, in the absence of a legislative act authorizing it, *held*, that, without deciding what would be the rights of holders if such bonds were in the hands of one who had paid value, an injunction was the proper remedy to prevent their issuance. Distinguished from Loonie *v.* The City of Galveston, 54 Tex., 517.

2. SAME. — The act of February 11, 1881, applied only to counties that had no court-houses, and not to those having a court-house which was insufficient or unsafe, and that act has no application to this case.

3. SAME — JURISDICTION. — Whether a court-house is in its construction sufficient for the purposes designated in its erection is a question regarding which the decision of the county commissioners' court is final.

4. COUNTY COMMISSIONERS' COURT — JURISDICTION — STATUTES CONSTRUED. — Neither under sec. 9 of art. 8 of the state constitution, arts. 1515 or 1514 of the Revised Statutes, nor under sec. 1, ch. 31 of the act of 1879, was the power conferred on counties to issue bonds, redeemable at fixed periods, to borrow money for the erection of court-houses.

5. IMPLIED POWERS. — It was the uniform custom in Texas, before the adoption of the present constitution, to confer on counties, by special legislative grant, the right to issue bonds, and since that time, in obedience to a constitutional requirement, it has been regulated by general law; hence the inference is proper that it was the legislative purpose to confine the power of a county to issue bonds to cases where it was expressly conferred by law.

6. STATUTES CONSTRUED. — The acts of February 11, 1881, and February 4, 1884, authorizing counties to issue bonds in certain cases, were not in violation of the state constitution. The bonds contemplated by the last act are such as may be redeemed at any time at the option of the county, and it has no application to a case where the redemption could only occur at specified and fixed periods of time.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

Suit by Robertson *et al.*, tax-payers of Washington county, for injunction to restrain the county commissioners' court from issuing negotiable bonds to the amount of $60,000, for the erection of a new court-house, and from levying taxes for that purpose.

The petitioners stated that they were citizens of Washington county; that the taxable property of the county had been assessed for the year 1883 at $7,500,000; that taxes for 1883 had theretofore been levied as follows: County, *ad valorem* and general tax, fifteen cents; court-house tax, twenty-five cents; tax to pay debt, ten cents,— the whole being fifty cents upon each $100 worth of taxable property; that petitioners together owned property assessed at $334,203, and taxes had been assessed against each; that the county of Washington had for many years a large brick court-house, in which the district and county courts had been constantly held, and in which the commissioners' court sat when it passed the orders complained of; and the records of said court had been kept safely therein; that the court-house was safe; that the commissioners and county judge in session February 17, 1883, resolved that the court-house was insufficient, and an unsafe depository for the public records, and ordered a levy of twenty-five cents on the $100 worth of property for the construction of a new court-house; that the resolution as to the condition was fraudulently made, with knowledge of its falsity; that on May 18, 1883, the court again met, and notwithstanding the facts in regard to the court-house, as alleged, which they each knew, it falsely and fraudulently decreed and ordered that the court-house was unsafe and unfit for further use.

And at the same session the commissioners' court further ordered as follows: That coupon bonds of said county be issued to the amount of $60,000, bearing interest from date of issuance at eight per cent. per annum, payable on April 10th of each year following. That said bonds be divided into three series, of equal amounts; the first series payable at the option of the county, after the expiration of five years; the second after ten years, and the third after fifteen years from date of issuance.

. . . That on June 4, 1883, the said court again met, and ordered that the court-house be erected on the present court-house square; and further, that as the one-fourth of one per cent. levied in February would be sufficient to pay interest, the levy of fifteen cents made for that purpose for 1883 be repealed; that the commissioners'

court had no authority to make such order and issue said bonds; that if it were in the power of the commissioners' court to issue said bonds, the county could not be deprived of its option to pay them at any time; that when said county might wish to pay them off they might be in the hands of innocent holders, and the county might be involved in costly and harassing, if not hopeless, litigation thereby; that great and irreparable injury would be done to plaintiffs and all tax-payers should the bonds come into the hands of innocent holders, by means of ruinous litigation, etc.; that great and irreparable injury would be done in this way; that the interest due upon April 10, 1884, could not by any chance exceed $2,000; the annual interest upon the whole issue of $60,000 could not exceed $4,800; that the levy of one-fourth of one per cent. for 1883 would amount to about $18,000, and therefore there would be accumulated in the treasury the sum of $16,000, which must be kept in the treasury without investment until the first series of bonds falls due. . . . That the assessment rolls were about ready for the board of equalization, and would by the board be placed in the hands of collector of taxes, and that if the rolls were approved and so turned over, petitioners would be put to great damage and expense; and that taxes so assessed would constitute a lien on plaintiffs' lands, and cast a serious cloud upon the title thereof, preventing alienation, etc.

The petition concluded with a prayer for a writ of injunction, for the following purposes: To restrain the county commissioners and county judge from issuing any of said bonds or making any contract for building based thereon. To restrain the county commissioners and judge, as a board of equalization, from approving the assessment rolls and levies and from giving the same to the collector. To restrain the assessor from assessing the special taxes. To restrain the county judge from purchasing or preparing the bonds; the county clerk from affixing the seal thereto, and the county treasurer from registering them and from paying out any money upon the same. . . .

The fiat directed the issuance of the writ, as prayed for, limiting the effect thereof so as not to cover or forbid any levy of taxes for building a court-house, or from the erection thereof in any other lawful manner than by the issuance of bonds.

The defendants answered, and demurred to the petition on the following grounds:

1. Because it did not appear that the court had jurisdiction.

2. Because there was a misjoinder of parties plaintiff.

3. Because the facts alleged were not sufficient to entitle plaintiffs to maintain this suit.

4. Because the petition was vague and general, and did not show with sufficient certainty the cause of action, nor the interests of plaintiffs, nor the amount of taxes assessed against each, respectively. Nor did it appear in what amounts, respectively, the plaintiffs would be damaged, etc.

5. Because it appeared that plaintiffs had an adequate legal remedy.

6. Because it did not appear that the county commissioners' court had acted illegally, wrongfully, etc., or abused the powers and discretion confided in them by law.

7. Because the allegations in regard to the court-house were too vague, etc.

*Searcey & Bryan* and *Hume & Shepard*, for appellants, cited: Cooley on Taxation, p. 548; 2 Dillon on Mun. Corp. (2d ed.), §§ 731–734; id. (3d ed.), §§ 914–16; Burroughs on Taxation, p. 444; High on Injunctions, §§ 573–74, 1298–1301, 1560; Colburn v. Mayor of Chattanooga, 17 Am. L. Reg., 191; Pope v. Halifax, 12 Cush., 411; Dent v. Cook, 45 Ga., 323; Mayor Balto. v. Gill, 31 Md., 375; Warren Co. Ag. & Stock Co. v. Burr, 55 Ind., 30; Rothrock v. Carr, id., 334; Dorsey v. R. R. Co., 32 Ind., 244; Perry v. Kinnear, 42 Ill., 160; Springfield v. Edwards, 84 Ill., 626; Beauchamp v. Board of Supervisors of Kankakee Co., 45 Ill., 274; Pullman v. Mayor, 49 Barb., 57; Sinclair v. Board of Supervisors of Winona Co., 23 Minn., 404; Const. 1876, art. VIII, sec. 9; id., art. V, sec. 18; R. S., arts. 1514, 1515; Gen. Laws 1879, ch. 31, p. 33; Cooley's Const. Lim., p. 79; Oliver v. Carsner, 39 Tex., 396; Henderson v. Beaton, 52 Tex., 51–2, opinion by Moore, C. J.; Field v. People, 2 Scam. (Ill.), 83; Fletcher v. Oliver, 25 Ark., 298; Thomas v. Owens, 4 Md., 189, 223; Broom's Legal Maxims, 65, 664; People v. Draper, 15 N. Y., 543; Potter's Dwarris on Statutes, p. 221; The Federalist, Nos. 83 and 84.

On the proposition that the statute had no application to a county that had a court-house, they cited: Gen. Laws 1881, ch. 9, p. 5, sec. 1; Lewis v. Sherman Co., 2 McCrary, C. C., 464; Brown v. Sherman Co., id., 460; Walcott v. Lawrence, 26 Mo., 353; Ruggles v. Collier, 43 Mo., 353; Thomas v. City of Richmond, 12 Wall., 349; Gause v. Clarksville (C. C. U. S., Dillon, J.), 18 Am. Law Reg., 497; Colburn v. Chattanooga (Sup. Ct. Tenn.), 17 Am. Law Reg., 191; Welch v. Post, 99 Ill., 471.

*Breedlove & Ewing*, for appellees, cited: Const., art. VIII, sec. 9; Gen. Laws 1881, p. 5; Brown *v.* Graham, 1 Tex. Law Reporter, 801; San Patricio Co. *v.* McClane, 58 Tex., 243; Davey *v.* Galveston County, 45 Tex., 300; Fort Worth *v.* Davis, 57 Tex., 227; Cooley's Const. Lim., 208–214 [*171–177], 220–227 [*182–188], and authorities cited; Stewart *v.* Supervisors, 30 Iowa, 9; Commonwealth *v.* Railroad, 62 Pa. St., 286; Abbott *v.* Dodge County, 8 Neb., 124; Mahn *v.* State, 1 Porter, 265; Doe *ex dem.* Chandler *v.* Douglass, 8 Blackf., 10; Louisville *v.* Hyatt, 2 B. Mon., 177; Smith *v.* People, 47 N. Y., 336; Chesnut *v.* Shane, 16 Ohio, 599; Bruce *v.* Schuyler, 4 Gilm., 221; Const., art. V, sec. 18; R. S., arts. 1509–1514; Bourgeois *v.* Mills, 2 Tex. Law Reporter, 441; High on Injunctions, §§ 403, 785, 797; 1 Dillon on Mun. Corp., §§ 58, 59, 669, 672; Mooers *v.* Smedley, 6 Johns. Ch., 28; Page *v.* St. Louis, 20 Mo., 136; Torrent *v.* Muskegon, 47 Mich., 115; People *v.* Supervisors, 84 Ill., 303; Warfel *v.* Cochran, 34 Pa. St., 381; State *v.* Freeholders, 3 Zab. (N. J.), 214; Michigan City *v.* Robards, 34 Ind., 471; George *v.* Dean, 47 Tex., 84; R. G. R. Co. *v.* Scanlan, 44 Tex., 649; I. & G. N. R. Co. *v.* Smith County, 54 Tex., 1; Red *v.* Johnson, 53 Tex., 284; H. & T. C. R. Co. *v.* Presidio County, 53 Tex., 518; Duer *v.* Police Court, 34 Tex., 283; Jones *v.* Stallsworth, 55 Tex., 139; High on Injunctions, §§ 783–795; 3 Wait's Actions and Defenses, 749.

WILLIE, CHIEF JUSTICE.— The objection taken in the demurrer of the defendants below to the jurisdiction of the district court is not insisted upon here. This court has so frequently decided in favor of such jurisdiction that we need only refer, for a disposition of the point, to a few of the leading decisions in which the question has been settled. County of Anderson *v.* Kennedy, 58 Tex., 616; Blessing *v.* City of Galveston, 42 Tex., 641; George *v.* Dean, 47 Tex., 73.

The sole question for our decision is: Had the county of Washington, at the time the commissioners' court took action upon the subject, power to issue negotiable bonds due and redeemable after the lapse of five, ten and fifteen years, and bearing interest from date, for the purpose of raising money to build a court-house; and to levy an annual tax of one-fourth of one per cent. to pay the interest accruing upon these bonds and provide a sinking fund for their redemption?

In our opinion the act of February 11, 1881, has no bearing upon

this question. That statute by its very terms applies only to such counties as had no court-houses at their county seats, and not to a county whose court-house was merely insufficient for the public business or unsafe for the custody of the public records.

We do not think there is anything in the position taken by the plaintiffs wherein they join issue with the commissioners' court as to the character and condition of the court-house of Washington county, and claim that it is sufficient for all the purposes to which such buildings are usually applied. We think the intention of the law was to leave that to the discretion and judgment of the commissioners' court, and to make their decision upon the question final. They are presumed to have been selected with a view to their capacity for passing upon such matters and their disinterestness in the subject, and it would not be proper to allow the opinion of persons not thus selected, and who might be interested in preventing the levy of a tax for the purpose of building a court-house, to prevail over the judgment of the court exercised as provided by law.

We must consider the question of the legality of the action of the commissioners' court in view of the law as it stood at the time the resolutions complained of were adopted.

The ninth section of the eighth article of our constitution authorizes counties to levy a tax of not more than fifty cents on the hundred dollars, for the erection of public buildings. The same authority is reiterated in effect in art. 1515 of the Revised Statutes, and in sec. 1, ch. 31, of the acts of 1879. By art. 1514 of the Revised Statutes it is made the duty of the county commissioners' courts to provide and keep in repair court-houses, jails and all necessary public buildings.

In none of these sections is power given to issue bonds or borrow money for the purpose of erecting court-houses, and if Washington county possessed this power at the time it took the action sought to be enjoined, it must have been by virtue of an implied and not an express authority.

The question of the implied right of municipal corporations to borrow money or issue bonds with all the qualities of paper negotiable by the law merchant has undergone frequent adjudication in the American courts. It has also been extensively discussed by the ablest elementary writers and commentators upon the subjects to which the question properly belongs. The weight of authority, so far as the state decisions are concerned, seems to favor the power; the majority of elementary writers are decidedly opposed to it. Mills v. Gleason, 11 Wis., 470; Bank v. Chillicothe, 7 Ohio, part 2,

p. 31; Williamsport v. Commonwealth, 84 Pa. St., 487; Clarke v. School District, 3 R. I., 199; City of Galena v. Corwith, 48 Ill., 423. *Contra*, Hackettstown v. Swackhamer, 37 N. J. L., 191; Knapp v. Hoboken, 39 N. J. L., 394; Dent v. Cook, 45 Ga., 323; Hamlin v. Meadville, 6 Neb., 227; Beaman v. Board of Police, 42 Miss., 238; Capmartin v. Police Jury, 23 La Ann., 190; Dillon on Mun. Bonds, 12, 13, 14; 1 Dillon on Mun. Corp., § 117 *et seq.;* Burroughs on Pub. Sec., ch. V; 2 Dan. on Neg. Inst., 1527 *et seq.*

In the supreme court of the United States, where the point is most frequently raised, the question is in a very unsettled state, and some of the decisions of that court seem difficult to reconcile with each other. Police Jury v. Britton, 15 Wall., 566; Wells v. Supervisors, 102 U. S., 625; The Mayor v. Ray, 19 Wall., 484; Lynde v. The County, 16 Wall., 6; Hitchcock v. Galveston, 96 U. S., 341. See, also, Gause v. Clarksville, 5 Dillon, 165.

It is to be noted, however, that whenever, in that tribunal, the power has been sustained, it has been by a divided court. Whenever it has been denied, the court has been unanimous.

The decisions, too, have been made to rest more or less upon the policy of the particular state in which the cases have arisen in reference to the issuance of negotiable bonds by municipal corporations. See authorities *supra*.

It is further to be remarked that in all cases to which we have had access the question has arisen after the bonds have been issued and passed into the hands of parties who have paid value for them.

Moreover, with but few exceptions, where the implied power we are discussing has been sustained, the corporations making the securities have been cities and not counties, as in the present instance.

Fortunately, in this conflict of views, we are not forced in the present case to decide upon the abstract question of the right of municipal corporations proper to borrow money or issue negotiable instruments for the purpose of carrying out a duty imposed upon it by law.

The present case is one where a county and not a chartered city is claiming the right to issue negotiable securities to obtain money for a public purpose. The bonds have not been issued, and the effort of the plaintiffs was to prevent their being placed upon the market, and it is not a case where a recovery is sought upon the bonds by an innocent holder.

Some of the courts and law writers heretofore referred to draw distinctions between the power of a chartered city and that of a county to exercise the implied power of borrowing money and issu-

ing negotiable instruments to secure its return. This distinction is recognized in at least one of the leading opinions in which the authority was sustained as to a chartered city (Williamsport v. Com., *supra*), and is also referred to by Mr. Dillon in his valuable work upon Municipal Corporations, vol. 1, sec. 23.

Again, as we have seen, the general policy of the state may be looked to in order to ascertain whether or not an unexpressed power of this character may be implied.

If the constant and invariable rule is to confer upon counties by express legislation the right to issue these securities, when it is intended that it shall be exercised, it is but a fair conclusion that it was the intention to confine its exercise to cases when expressly granted.

This was the invariable rule in Texas before the adoption of the present constitution, and since then, in obedience to the second section of article 11, the grant has always been by general law.

We think this a fair indication of the policy of our state upon the subject, so far as the legislature could shape that policy. By a reference to our constitution, too, it will be seen that in some instances where municipal corporations are authorized to incur indebtedness, express power is given to issue bonds and levy a tax to redeem them. Art. XI, secs. 5 and 7. It may be fairly inferred from this that its framers did not intend that this power should be exercised in any other cases; at least that it should not be deduced from the constitution alone.

Since the adoption of the present constitution there have been two general statutes enacted authorizing counties to issue bonds for the purpose of building court-houses, indicating a continuance of the general policy of the state that they should not exercise this power by implication from the duty to erect such buildings.

These two acts, that of February 11, 1881, and that of February 4, 1884, were not in violation of the constitution, and were passed for the purpose of legalizing what the organic law had not itself authorized. The constitution permitted the levy of a tax for erecting public buildings. It did not empower counties to issue bonds for that purpose, nor did it prohibit the legislature from granting this power. These acts gave the authority which the constitution left to the wisdom of the legislature to confer or refuse as it might deem best for the public good.

Neither of these acts applied to the present case as it was presented to the court below; the first, for reasons already given; and the second, because it bore date too late to have any effect upon the right of the plaintiffs to the injunction sought in their petition.

The bonds contemplated by the last act are redeemable at any time at the option of the county. The bonds sought to be enjoined were to be redeemed at the option of the county in five, ten and fifteen years.

Any bonds which the county might now issue for the purpose of building would be governed by this last act, and must be redeemable at the option of the county at any time, and such seems to be the fixed policy of our law in reference to all such bonds.

The conclusions which we draw from what has already been said are, that the corporation being a county, a somewhat more stringent construction should be placed upon their implied powers, and especially that of borrowing money and issuing negotiable bonds. That the policy of our law and the universal custom of our state having been to grant expressly to counties this power when its exercise is desirable, the failure to grant it in cases such as that presented in this appeal is a strong argument to show that it was properly withheld. The fact that certain classes of counties, viz., those having no court-houses at their county seats, were permitted to issue such bonds, tends strongly to prove that all others were to be denied a similar authority. The further fact that not until the present year have counties, situated as Washington county is, been expressly authorized by law to build new court-houses by the use of negotiable paper, tends strongly to show that heretofore they could not legally do so, at least in the opinion of the legislature.

Lastly, this being a case where no bonds have been issued, but where the attempt to issue them has been stayed by injunction, we think the case is different from those in which the bonds have passed into the hands of purchasers for value, and a different rule of decision may apply. See Dillon on Mun. Corp. We think this case must be viewed in reference to the policy of our state at the time of the adoption of our present constitution, which was clearly against the right to imply powers of this kind in a county, but to expressly grant them when it was intended they should be exercised. Without intimating what our decision might be if the suit were upon the bonds themselves in the hands of a party paying value for them, we are of opinion that upon a proceeding by injunction like the present, and upon the facts set forth in the bill, the injunction should have been granted.

The county commissioners have authority now, under the act of 1884, to build court-houses by the use of such bonds, but they must comply in all respects with the provisions of that statute.

It may be well to remark in conclusion that the case of Loonie v.

City of Galveston, 54 Tex., 517, does not conflict with the present. That was a case where a city and not a county was interested; where suit was brought upon bonds already issued, and not to enjoin their issuance; and where the bonds were in the hands of the party to whom they had been originally delivered by the city to pay for work done upon its streets, who had agreed to take payment in such securities, and had performed his contract before receiving them. The case is therefore unlike the present in the particular matters upon which this opinion is based, and to these alone the present decision is intended to be confined, and we express no opinion as to the correctness of the view taken by the court in that case.

We think the court erred in sustaining the demurrer to the petition and dismissing the bill, and the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 21, 1884.]