## MONTGOMERY v. ORR and others.

(*Circuit Court, N. D. Texas.* April Term, 1886.)

1. COUNTIES—BONDS—COURT-HOUSE—POWERS OF COMMISSIONERS—WILBARGER COUNTY.

   Except when attacked for fraud, the decision of the county commissioners as to the character of the court-house needed is final; and, although the cost may exceed the amount for which the commissioners are presently authorized to levy taxes, they may contract for the building of a court-house; the cost thereof to be paid in bonds to be issued and delivered and made payable to the contractors, and bearing interest from the date of issuance, as soon as the taxable value of the county increases so as to enable the bonds to be issued in accordance with law.

2. SAME—PRELIMINARY INJUNCTION—PLEADING.

   A preliminary injunction to restrain the action of the county commissioners, even though they are attempting to exceed their authority, will not be granted, except it appear from the pleadings that the complainant has a sufficient interest at stake in the county to entitle him to institute proceedings.

In Equity.

*W. W. Leake,* for complainant.

*L. C. Alexander, J. G. Winter,* and *D. R. Britt,* for respondent.

McCORMICK, J. The complainant, a citizen of Iowa, brings his bill against the county of Wilbarger, in this state, and against J. P. Orr, L. N. Perkins, and W. A. McKinney, the county judge, clerk, and treasurer of said county, and all citizens of Texas, and alleges, in substance, that complainant owns 3,400 acres of land in Wilbarger county, subject to taxation, of the value of $30,000; that the county commissioners' court of Wilbarger county has already issued bonds of the county to the amount of $8,000 for the erection of a jail in said county, and that said commissioners' court is about to contract for the building of a court-house at a cost of $35,000, and to issue bonds of the county in payment therefor; that the taxable property in said county does not exceed in value $2,000,000; that such an issue of bonds is unwarranted, and if issued, and passed into the hands of innocent purchasers, would be a cloud upon his title to his land in said county; and he prays for an injunction restraining said county of Wilbarger, and all of its officers and agents, and the said county judge, county clerk, and county treasurer, officially and personally, from issuing, negotiating, selling, signing, countersigning, or registering said bonds, or any of them, or any obligation of said county for said sum of money, or any other sums over and above what a tax of one-fourth of 1 per cent. will extinguish in 10 years. After notice to respondents, the matter came on for hearing on the twenty-fourth of April.

The respondents admit that bonds of the county to the extent of $8,000 have already been issued for the purpose of erecting a county jail, and that the county has contracted for the building of a court-

house at a cost of $34,900, to be paid for as follows: $8,000 in Wilbarger county bonds, bearing 8 per cent. interest from date, and payable at the will of said county, interest payable annually on the tenth day of April, said bonds to be issued, delivered, and made payable to the contractors or order on the signing of the contract to build; and the balance of said amount to be paid in bonds to be issued and delivered and made payable to the contractors or order, and bearing interest from date of issuance at 8 per cent. per annum until paid, as soon as the taxable values of said Wilbarger county increases so as to enable said bonds to be issued in accordance with the law; the county reserving the right to pay cash in lieu of bonds, if the money can be procured from other sources than by issuing bonds. The answer shows that the county owns town lots in the county-seat now worth $12,500, and of greater prospective value, which it is the policy and purpose of the county authorities to sell, and appropriate the proceeds, *pro tanto*, to the payment of the cost of erecting said court-house; that a railroad is being constructed into and through said county; that the population and taxable values of said county are rapidly increasing; that the complainant has not rendered any property in Wilbarger county for taxes in his own name, and that no deed, bond for title, or other evidence of title to land, showing ownership thereof by complainant, appears of record in Wilbarger county; and that there is not in Wilbarger county any 3,400 acres of land (excluding town lots and town-sites, property owned and assessed against other persons than the complainant) of the value of nine dollars an acre, or $30,000 for 3,400 acres.

The allegations of the answer as to the complainant's not rendering in his own name any land for taxes in Wilbarger county, and that no evidence of his owning any land in that county appears on the records of said county, are supported by the affidavit of the proper custodians of the records, and are not replied to or denied in the oral argument on the hearing.

The statute provisions bearing upon this subject are:

"The county commissioners' court of any county is hereby authorized and empowered to issue the bonds of said county, with interest coupons attached, in such manner as may be necessary to erect a suitable building for a court-house or jail, or both; said bonds running not exceeding fifteen years, and redeemable at the pleasure of the county, and bearing interest at a rate not exceeding eight per cent. per annum." Act twenty-seventh March, 1885.

"The commissioners' court of the county shall levy an annual *ad valorem* tax on the property in said county sufficient to pay the interest, and create a sinking fund for the redemption of said bonds not to exceed one-fourth of one per cent. for any one year. The county shall not issue a larger number of bonds than a tax of one-fourth of one per cent. annually will liquidate in ten years, and such bonds shall be sold only at their face or par value." Act February 11, 1881.

"Said courts [county commissioners' courts] shall have power, and it shall be their duty, to provide and keep in repair court-houses, jails, and all necessary public buildings." Rev. St. art. 1514.

It appears by the answer that the county has not issued, and does not propose to issue, a larger amount of bonds than a tax of one-fourth of 1 per cent. on the taxable values in the county at the time of the issue will pay in 10 years. The right of the county commissioners' court to make the contract set out in the answer depends on the power of the county to provide a court-house, and give its valid written obligation to pay therefor at a future day. It appears to me that this question is very similar to the one presented in *City of Galveston* v. *Loonie,* 54 Tex. 523, where the power of the city so to contract was upheld. See authorities cited in that case. Here we have a comparatively new county, just coming into notice, whose population is alleged to have trebled within a year, its taxable values rapidly increasing, and the need of a court-house pressing upon the commissioners' court. Why may they not contract for the building of such a house as will adequately meet the immediate demands of this growing population? Why should they be required, by a writ proceeding from another court, to delay the discharge of the duty imposed upon them by the law, and the choice of their fellow-citizens, or restrained from exercising in this matter that discretion with which they are clothed by law and the selection of them for that office by the people most interested? Except when attacked for fraud, their decision as to the character of a court-house that is needed is final. *Robertson* v. *Brudlove,* 61 Tex. 321. But, on the showing of the bill, 3,400 acres of land in Wilbarger county, claimed to be owned by complainant, is alleged to be worth $30,000, without showing where the land is, or any reason for its being above the average value of land in that county. This is very nearly nine dollars an acre. At that rate the land alone in Wilbarger county (900 square miles) would be worth $5,000,000, and furnish an ample basis for the issuance of bonds to pay for an $8,000 jail and a $35,000 court-house. But if, as is probable, the average value of land in Wilbarger county does not exceed three dollars per acre, it sufficiently appears from the bill, answer, and exhibits that the complainant is not in a position to invoke the authority of this court to restrain the action of the commissioners' court, even though said commissioners' court are attempting to exceed their authority in providing a court-house.

The prayer for a preliminary injunction is refused.