OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



November 3, 1999

The Honorable James W. Carr
Lavaca County Attorney
P.O. Box 576
Hallettsville, Texas 77964-0576

Opinion No. JC-0139

Re: Whether a county may borrow money from the State Infrastructure Bank for road and bridge construction and repay the loan with the proceeds of ad valorem property taxes levied for that purpose over a term of years without issuing bonds or other obligations evidencing the loan (RQ-0057-JC)

Dear Mr. Carr:

You ask whether Lavaca County may borrow money from the State Infrastructure Bank ("the Bank") for road and bridge construction and repay the loan with the proceeds of ad valorem property taxes levied for that purpose over a term of years without issuing bonds or other obligations evidencing the loan. County authority to enter into debt must be express or necessarily implied by statute. Because no statute expressly or impliedly authorizes a county to borrow money from the State Infrastructure Bank in the manner proposed here, the county may not borrow funds from the Bank and repay the loan with the proceeds of ad valorem property taxes levied for that purpose over a term of years without issuing bonds or other obligations evidencing the loan.

The State Infrastructure Bank is governed by chapter 222, subchapter D of the Transportation Code, which the legislature enacted in 1997.[1] The legislature created the Bank within the Department of Transportation to take advantage of a new federal program to fund highway construction,[2] and subchapter D mirrors the federal law providing for state infrastructure banks, *see* National Highway System Designation Act of 1995, Pub. L. No. 104-59, § 350, 109 Stat. 568, 618; *see also* Transportation Infrastructure Finance and Innovation Act of 1998, Pub. L. No. 105-178, § 1511, 112 Stat. 251. Pursuant to subchapter D, the purpose of the Bank is to "encourage public and private investment in transportation facilities" and to "develop financing techniques designed to [] expand the availability of funding for transportation projects and to reduce direct state costs;

---

[1]Act of June 1, 1997, 75th Leg., R.S., ch. 1711, § 1.21, secs. 222.071-.078, 1997 Tex. Gen. Laws 4427, 4433-36.

[2]*See* SEN. COMM. ON INTERNATIONAL RELATIONS, TRADE AND TECHNOLOGY, BILL ANALYSIS, Tex. S.B. 370, 75th Leg., R.S. (1997); SEN. COMM. ON INTERNATIONAL RELATIONS, TRADE AND TECHNOLOGY, BILL ANALYSIS, Tex. Comm. Substitute S.B. 370, 75th Leg., R.S. (1997).

[] maximize private and local participation in financing projects; and [] improve the efficiency of the state transportation system." TEX. TRANSP. CODE ANN. § 222.073 (Vernon 1999). To further these purposes, the Transportation Commission may use money in the Bank "to provide financial assistance to a public or private entity for a qualified project." *Id.* § 222.074(a). It may do so by extending credit by direct loan, providing credit enhancements, serving as a capital reserve for bond or debt instrument financing, subsidizing interest rates, insuring the issuance of a letter of credit or credit instrument, financing a purchase or lease agreement in connection with a transit project, providing security for bonds or other debt instruments, or providing methods of leveraging money that have been approved by the United States Secretary of Transportation and relate to the project for which the assistance is provided. *See id.* § 222.074(a)(1)-(8). The Transportation Commission has adopted rules specifying the procedures and conditions for applying for and obtaining assistance from the Bank. *See* 43 TEX. ADMIN. CODE ch. 6 (1999).

Lavaca County would like to borrow money from the State Infrastructure Bank and forego the expense of issuing bonds or certificates of obligation under chapter 271 of the Local Government Code or anticipation notes under chapter 1431 of the Government Code, formerly article 717w of the Revised Civil Statutes,[3] to evidence its agreement to repay the money it has borrowed. *See* Letter from Honorable James W. Carr, Lavaca County Attorney, to Elizabeth Robinson, Office of the Texas Attorney General (Apr. 5, 1999) (on file with Opinion Committee). Rather, the county would merely commit future tax revenue to repay the loan. *See id.* Presumably, the county would evidence the borrowing by entering into an agreement with the Bank. The county would levy a sufficient tax to pay the principal and interest on the debt as required by section 7 of article XI, which mandates cities and counties, at the time a debt is created, "to levy[] and collect[] a tax sufficient to pay the interest thereon and [to] provide . . . a sinking fund," TEX. CONST. art. XI, § 7. *See* Brief from Honorable James W. Carr, Lavaca County Attorney, to Elizabeth Robinson, Office of the Texas Attorney General (Apr. 14, 1999) (on file with Opinion Committee). The total tax levy would not exceed the constitutional limitation on the county tax rate set forth in section 9 of article VIII. *See id.*

Commissioners courts do not have a general power to incur debt, which, in this context, is generally defined as "any pecuniary obligation imposed by contract, except such as will, at the date of the contract, within the lawful and reasonable contemplation of the parties, be satisfied out of current revenues for the year, or out of some fund then within the immediate control of the city [or county]." *City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765, 768 (Tex. App.–Texarkana 1994, writ denied) (defining "debt" for purposes of article XI, section 7 of the Texas Constitution, which provides that a city or county is prohibited from creating a debt unless at the same time it

---

[3]The 76th Texas Legislature repealed former articles 701-705, 717q, 717w, and 726 of the Revised Civil Statutes and codified them without substantive change in Title 9 of the Government Code, the Public Securities Title. *See* Act of May 10, 1999, 76th Leg., R.S., ch. 227, § 1, secs. 1251.001-.005, 1371.001-.106, 1431.001-.013, 1471.001-.087, 1999 Tex. Sess. Law Serv. 721, 775, 786, 817, 834; *id.* § 28, 1999 Tex. Sess. Law Serv. at 1056 (repealing articles 701-705, 717q, 717w, and 726). For ease of citation, this opinion will refer to the provisions of Title 9 as they will be codified in the Government Code.

provides for payment of the debt). As one commentator has stated, "Counties have no statutory authority to merely borrow money from a bank." 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 17.27 (1989); *see also* Tex. Att'y Gen. Op. No. JM-274 (1984) at 1 ("Counties lack authority to borrow money except through the issuance of bonds, certificates of obligation, or other forms of indebtedness which are specifically authorized by law."). Courts have long held that the authority of a commissioners court to make contracts on behalf of the county is limited to that conferred either expressly or by necessary implication by the constitution and laws of the state. *See, e.g., Childress County v. State*, 92 S.W.2d 1011, 1016 (Tex. 1936); *Jack v. State*, 694 S.W.2d 391, 397 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.). In the area of public finance, courts have been particularly reluctant to imply the authority of a local government, such as a county, to enter into debt. *See, e.g., San Antonio Union Junior College Dist. v. Daniel*, 206 S.W.2d 995, 999 (Tex. 1947) (and cases cited therein) (power to issue negotiable paper for improvements beyond powers of city or county unless specially granted; when granted, may only be exercised in mode and for purposes specified); *Lopez v. Ramirez*, 558 S.W.2d 954, 957 (Tex. Civ. App.–San Antonio 1977, no writ) (statutes regarding authority to create debt must be strictly and narrowly construed) (citing *Robertson v. Breedlove*, 61 Tex. 316 (1884), and *Daniel*, 206 S.W.2d 995); *see also* Tex. Atty. Gen. Op. No. JC-0036 (1999) at 10 ("Provisions authorizing a local government to create debt must be strictly and narrowly construed.") (citations omitted).

A number of provisions expressly authorize counties to levy taxes to pay for road and bridge construction, *see* TEX. CONST. art. III, § 52(b), (c) (authorizing unlimited taxes to secure road bonds); *id.* art. VIII, § 9 (authorizing county to levy taxes including taxes for road and bridge construction and maintenance); *see also* TEX. TRANSP. CODE ANN. §§ 256.001 (Vernon 1999) (authorizing use of county road and bridge fund); 256.051 (authorizing levy of bond taxes), and to finance road and bridge construction by issuing bonds and other debt instruments secured by a pledge of those taxes, *see, e.g.*, TEX. GOV'T CODE ANN. §§ 1251.001-.005, 1431.001-.013, 1471.001-.087;[4] TEX. LOC. GOV'T CODE ANN. ch. 271 (Vernon 1999). No provision authorizes a county to simply borrow money from a bank to pay for road and bridge construction and to pledge future ad valorem property taxes to repay the loan.

Generally, statutes that authorize a county to borrow funds for road and bridge construction require the issuance and sale of bonds or other obligations in compliance with statutory procedures, including approval by the Attorney General. *See, e.g.*, TEX. GOV'T CODE ANN. § 1431.004(a)(1)(A) (authorizing anticipation notes to pay for a contractual obligation incurred or to be incurred for the construction of a public work); *id.* ch. 1471 (providing for county and road district road bonds);[5] TEX. LOC. GOV'T CODE ANN. ch. 271 (Vernon 1999) (authorizing certificates of obligation to pay for contractual obligation to be incurred for the construction of any public work). These obligations are sold to purchasers in exchange for money, which is used for county projects. The obligations evidence a loan made by the purchaser to the county and the county's agreement to repay the money

---

[4]*See supra* note 3.

[5]*See supra* note 3.

it has borrowed. *See* BLACK'S LAW DICTIONARY 178 (6th ed. 1990) (a "bond" is "evidence of a debt on which the issuing . . . governmental body promises to pay the bondholders a specified amount of interest for a specified length of time, and to repay the loan on the expiration date"); 22 ISAAC SINGER, TEXAS PRACTICE: MUNICIPAL LAW AND PRACTICE § 303 (1976) (a "bond is evidence of creation of a debt"). In addition, in *Lasater v. Lopez*, 217 S.W. 373 (Tex. 1919), the Texas Supreme Court recognized the authority of counties to pay road construction contractors for work performed with interest-bearing warrants payable in future years as a necessary authority that preexisted counties' power to issue bonds for road and bridge construction.

The county's query suggests that the county is authorized to borrow the funds and to pledge taxes to repay the debt without issuing bonds or other obligations provided that the county complies with the strictures of section 7 of article XI. However, this provision imposes conditions on the creation of debt; it does not authorize creation of debt. *See* Tex. Att'y Gen. Op. No. DM-467 (1998) at 7 n.18 ("Article XI, section 7 [of the Texas Constitution] limits the authority of a county to incur debt; it does not affirmatively authorize counties to levy taxes for any purpose. . . . Therefore, before providing for a levy and sinking fund in order to comply with article XI, section 7, a county should first verify that it is authorized to levy the tax.") (citing *Mitchell County v. City Nat'l Bank*, 43 S.W. 880, 883 (Tex. 1898) (Texas Constitution article XI, section 7 "contains no grant of authority to levy a tax")). Compliance with section 7 of article XI by providing to repay borrowed funds is not a sufficient basis for a county to borrow the funds. If that were the case, there would be no need for the many statutes authorizing the issuance of bonds and other obligations. For the same reason, the mere fact that the loan may be repaid without exceeding the article VIII, section 9 ceiling for the county tax rate is not a sufficient basis for a county to borrow the funds.

A brief submitted by the Department of Transportation suggests that the authority of a county to borrow money from the State Infrastructure Bank and pledge tax revenues to repay the loan without issuing bonds or other obligations may be inferred from the provisions in the Transportation Code creating the Bank, particularly section 222.074 of subchapter D, which authorizes the Bank to "extend credit by direct loan," TEX. TRANSP. CODE ANN § 222.074 (Vernon 1999). *See* Letter Brief from Richard D. Monroe, General Counsel, Department of Transportation, to Elizabeth Robinson, Office of the Texas Attorney General, at 2 (July 29, 1999) (on file with Opinion Committee) [hereinafter "DOT Brief"]. For the reasons explained below, we disagree.

No provision in subchapter D expressly authorizes a county to borrow funds from the State Infrastructure Bank. Nor do we believe that county authority to borrow funds from the Bank must be necessarily implied by subchapter D. The Bank is authorized to assist both public and private entities in a variety of ways: It may assist directly by making a loan or, more indirectly, by generally enhancing, insuring, or subsidizing payments securing debt issued by these entities to finance a project. *See* TEX. TRANSP. CODE ANN. § 222.074 (a)(1)-(8) (Vernon 1999); *see also* National Highway System Designation Act of 1995, Pub. L. No. 104-59, § 350(c), (*l*)(3), 109 Stat. 568, 618; Transportation Infrastructure Finance and Innovation Act of 1998, Pub. L. No. 105-178, § 1511(a)(1), (d), 112 Stat. 251 (defining "other assistance" to include providing credit enhancements, serving as capital reserve for bonds or debt instruments, subsidizing interest rates,

ensuring issuance of letter of credit and credit instruments, financing purchase and lease agreements, providing debt security, and providing other debt financing and leveraging approved by the United States Secretary of Transportation; and providing that a state infrastructure bank "may make loans or provide other assistance to a public or private entity in an amount equal to all or part of the cost of carrying out a project eligible for assistance").

Counties need not borrow funds from the State Infrastructure Bank in the manner proposed by the county in order to participate in the Bank's assistance programs. Counties may be able to participate in the types of assistance the Bank is authorized to provide, within the statutory framework for county financing, in several ways. With respect to the direct loan assistance, for example, a county may issue bonds or other obligations that it is expressly authorized to issue for road and bridge construction and sell them to the Bank in exchange for the "loan" of the funds or purchase price. Neither subchapter D nor the Transportation Commission rules limit how a "direct loan" is to be evidenced or made and, in fact, subchapter D appears to contemplate that the Bank will acquire "obligations" that evidence loans it has made. *See* TEX. TRANSP. CODE ANN. § 222.075(d) (Vernon 1999) (revenue bonds issued to obtain funds for Bank payable in part from principal and interest payments paid on "acquired obligations"), (f) (Transportation Commission may require participants to make charges, levy taxes, or otherwise provide for sufficient money to pay "acquired obligations").

In addition, counties may be able to participate in the more indirect assistance the Bank is authorized to provide. For example, the Bank may provide credit enhancement to a county authorized to execute credit agreements for obligations issued to finance transit projects. *See id.* § 222.074(a)(2); TEX. GOV'T CODE ANN. § 1371.001(1), (4), .056 (authorizing certain issuers, including home-rule cities and counties with certain population, to enter into credit agreements in connection with issuance of bonds or other obligations).[6] Furthermore, subchapter D appears to authorize the Bank to "subsidize" interest payments on county obligations or to serve as a reserve fund on such obligations, presumably enhancing the obligations' security and marketability.

Neither the county nor the Department of Transportation asserts that the county cannot obtain a loan from the Bank using traditional statutory financing methods. Rather, the county indicates that it would like to obtain a loan from the Bank without following statutorily required procedures. But these procedures are not optional; issuing bonds or other obligations is the exercise of the issuer's borrowing authority in accordance with legislatively mandated procedures.

Given that the Bank may assist a variety of entities in a variety of ways, that it is not limited to loaning funds only in the manner proposed by the county (*i.e.,* without the county issuing bonds and or other obligations), and that counties are authorized to participate in some forms of assistance that the Bank has been established to provide, the authority of a county to borrow bank funds is not essential to the Bank achieving its statutory purpose. Therefore, the authority of a county to borrow money from the Bank may not be necessarily implied by subchapter D.

---

[6]*See supra* note 3.

The brief from the Department of Transportation also observes that state law authorizes counties to construct and maintain roads and bridges and to levy taxes for those purposes. *See* DOT Brief at 2 (citing TEX. TRANSP. CODE ANN. §§ 251.081 (Vernon 1999) (authorizing commissioners court to erect and maintain any necessary bridge in the county); 256.001 (county road and bridge fund)); *see also* TEX. TRANSP. CODE ANN. § 251.003 (Vernon 1999) (authorizing commissioners court to construct and maintain public roads). The brief states that the "power to create debt [to build and improve county roads and bridges] is implicit in the grant of authority to levy taxes to build and improve county roads and bridges," citing *Lasater v. Lopez* and Attorney General Opinion JM-642. DOT Brief at 2. But neither opinion stands for the proposition that county authority to borrow money must be implied by these statutes.

In *Lasater v. Lopez*, the court did not conclude that the authority to borrow money may be implied. Rather the court held that the county could pay for road construction by issuing interest-bearing county warrants. As subsequent courts have noted, there is a difference between obtaining property or labor on credit, which *Lasater* sanctioned, and borrowing money, which *Lasater* did not address. "Borrowed money can be diverted from its legitimate purpose and the voters deprived of any benefit therefrom, but there is no such danger when authorized services or improvements are obtained by the public on credit." *San Antonio River Auth. v. Shepperd*, 299 S.W.2d 920, 925 (Tex. 1957) (citing *Bridgers v. City of Lampasas*, 249 S.W. 1083, 1085 (Tex. Civ. App.–Austin 1923, writ ref'd)); *see also Adams v. McGill*, 146 S.W.2d 332, 335 (Tex. Civ. App.–El Paso 1940, writ ref'd); Tex. Att'y Gen. Op. No. JM-697 (1987) at 5-6 (noting that *Shepperd* relied on the distinction between obtaining authorized services or improvements on credit and borrowing money; equating purchase of jail by lease-purchase contract with the former rather than the latter). Thus, *Lasater* implies from statutes authorizing counties to expend money to make improvements the authority to obtain property and labor on credit; it does not imply authority to borrow money.

Nor does Attorney General Opinion JM-642 provide support for the proposition that a county has implied authority to borrow money for bridge and road construction. That opinion concluded that a joint city-county hospital board is authorized to borrow funds to purchase equipment and make renovations based on the entity's express authority to establish and equip a hospital. Its conclusion is expressly limited to a joint city-county hospital created under former article 4494i of the Revised Civil Statutes. *See* Tex. Att'y Gen. Op. No. JM-642 (1987) at 8-9. And, in an opinion on a county's implied authority to use its credit to purchase or construct a jail issued just a few months after Attorney General Opinion JM-642, this office concluded that the prior opinion was inapplicable because it "relied on the power of the home rule city in question to borrow funds." Tex. Att'y Gen. Op. No. JM-697 (1987) at 2. Thus, to the extent Attorney General Opinion JM-642 suggests that a county may have implied authority to borrow money, it has not been followed. We are not aware of any other attorney general opinion concluding that a county has implied authority to borrow funds.

In sum, county authority to enter into debt must be express or necessarily implied by statute. Subchapter D of chapter 222 of the Transportation Code neither expressly nor by implication authorizes a county to borrow funds for road and bridge construction from the State Infrastructure

Bank and to repay the Bank with the proceeds of ad valorem property taxes levied for that purpose over a term of years without issuing bonds or other obligations evidencing the loan. Neither *Lasater v. Lopez* nor Attorney General Opinion JM-642 supports the conclusion that a county has implied authority to borrow funds for road and bridge construction. Because no statute expressly or impliedly authorizes a county to borrow money from the State Infrastructure Bank in the manner proposed here, we conclude that Lavaca County may not borrow funds from the Bank and repay the loan with the proceeds of ad valorem property taxes levied for that purpose over a term of years without issuing bonds or other obligations evidencing the loan. Of course, counties may borrow money from the Bank using traditional statutory financing methods for road and bridge construction.

## S U M M A R Y

A county may not borrow money from the State Infrastructure Bank for road and bridge construction and repay the loan with the proceeds of ad valorem property taxes levied for that purpose over a term of years without issuing bonds or other obligations evidencing the loan.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee