### GRIFFITH et al. v. BUCHANAN, Co. Atty., et al. (No. 8009.)

Court of Civil Appeals of Texas. San Antonio. April 4, 1928.

**1. Counties ⬅175—Municipal corporations ⬅913—Bonds which have once been authorized and issued by county or city governments can be refunded without authorization by voters (Rev. St. 1925, art. 717).**

No bonded debt can be created by county, incorporated city or town without first being authorized by property holding, taxpaying voters of such county, city, or town, but when bonds have once been authorized and issued, county or city government can issue bonds to refund authorized outstanding bonds by virtue of Rev. St. 1925, art. 717.

**2. Municipal corporations ⬅903—Law permitting city to issue bonds refunding authorized outstanding bonds without vote of taxpayers does not apply to warrants issued by municipality (Rev. St. 1925, art. 717).**

Permission to city, by virtue of Rev. St. 1925, art. 717, to issue bonds to refund authorized outstanding bonds without vote of taxpayers, does not apply to warrants issued by municipality.

**3. Municipal corporations ⬅936—City could not obtain approval of bonds by Attorney General while suit was pending to destroy their validity (Rev. St. 1925, art. 715).**

City could not bring itself within provisions of Rev. St. 1925, art. 715, which creates prima facie validity of bonds that have been approved by Attorney General and registered with comptroller, by obtaining such approval and registry while suit was pending to destroy validity of bonds.

**4. Municipal corporations ⬅936—Prima facie validity of bonds secured by compliance with statute may be destroyed by proof of illegality (Rev. St. 1925, art. 715).**

Prima facie validity of bonds issued by municipality under provisions of Rev. St. 1925, art. 715, providing that approval by Attorney General and registry in comptroller's office of bonds renders them prima facie valid, may be destroyed by proof of nullity and illegality of bonds.

**5. Municipal corporations ⬅941 — Rights of innocent purchasers of municipal bonds will be protected by courts in contests of their validity.**

In election contest to secure nullification of bonds issued or authorized to be issued by municipality, rights of innocent purchasers would be protected by courts under proper and sufficient facts.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Suit by F. M. Griffith and others against A. F. Buchanan, County Attorney, and others. From judgment, plaintiffs appeal. Reversed and remanded.

Bryce Ferguson, of Pharr, for appellants.

D. W. Glasscock, of Mercedes, for appellees.

FLY, C. J. This purports to be a suit to contest an election, instituted by F. M. Griffith, W. A. McFarland, and J. W. Krause, claiming to be citizens, property owners, and taxpayers, and qualified voters in the city of San Juan in Hidalgo county, against A. F. Buchanan, county attorney, and J. B. Chalk, mayor, and F. L. Shafroth and L. C. Warner, commissioners, of the city of San Juan; the real purposes of the suit being to secure a judgment, as indicated by their prayer, "declaring the true results of said election and decreeing that the same failed of carrying by the number of votes required by law, and decreeing that the bonds proposed to be issued or which have been issued by virtue of said election be declared annulled and void and that the same be canceled and held for nought."

The petition does not state the names of the voters, whose right to vote was contested, nor are the grounds of contest given, except by reference to the notice of contest which is attached to the petition and referred to as "Exhibit No. 1." The names of the alleged illegal voters are not set out in that exhibit, but reference is therein made to "Exhibit A" and "Exhibit B" to ascertain the names of the voters, of which there are 20.

There are eight grounds of contest set forth in the notice of contest, to the effect that no taxable property was owned by the voters named in Exhibits A and B, on January 1, 1927, that the voters had not resided in San Juan for six months next preceding the election, that they had not paid their poll taxes, that each and all of them were aliens, that each of them received information in regard to voting from officers of the election in a language other than the English language, that each of them was given assistance in preparing his ballot, that each of them "illegally, wrongfully, and unlawfully permitted himself or herself to be conveyed in a vehicle to the voting place," and that each of them was permitted to disclose how he voted on the bond issue.

The evidence showed that 102 ballots were cast at the election, which were canvassed by the election officers and returns made that 52 voted for the proposition to issue $95,000 in refunding bonds and 50 against, and that 53 voted for the proposition to issue $12,500 of bonds and 49 against. The court found against all the grounds of contest, except that

two of the voters for both proposed bond issues were unnaturalized Mexicans, and he declared that there were 50 votes for and 50 against the issue of $95,000 worth of bonds and 51 for and 49 against the issuance of $12,500 worth of bonds. The appellees herein filed no answer and made no effort to assist the trial court in arriving at a correct conclusion as to the legality of the election, and their first appearance is through a brief filed in this court. The result of only one side of the contest being represented is that the evidence fails to disclose several matters absolutely essential to a proper disposition of the suit. For instance, there is no evidence tending to show when the approval of the Attorney General was given, except that it was done between the date of the election and the date of the trial. That matter could have been made clear by proof. The court finds that the bonds had been "duly sold to purchasers unknown to the court." There is nothing in the statement of facts to indicate that the bonds had been sold, and, if an inference were permissible, it might perhaps be inferred that the warrants were destroyed and the bonds given the holders of the warrants in lieu of the same. The disposition of the bonds is left to surmise and conjecture. A. A. Martyn, the city clerk, was the only witness who testified as to the disposition of the bonds, and his testimony is indefinite and inconclusive. He stated:

"The city has issued these bonds and they have been approved. These were refunding warrants and no additional obligation was incurred by the issuance of these bonds other than to take up warrants that had theretofore been issued. That was the purpose of them. Then the bonds were registered in the comptroller's office, after approved by the Attorney General, and the comptroller canceled out that much of our indebtedness, which was in the form of warrants or bonds."

The witness used warrants and bonds as interchangeable terms.

[1, 2] If the original debt of San Juan was evidenced by bonds issued by authority of a majority of taxpaying voters of the city, then by virtue of the provisions of article 717, Revised Statutes of 1925, the city would be authorized to issue refunding bonds without again submitting the question to the voters. No bonded debt can be created by a county,

incorporated city or town without first being authorized by the property holding, taxpaying voters of such county, city, or town, but when the bonds have once been authorized and issued the county or city government can issue bonds to refund the authorized outstanding bonds. That law would not, however, apply to anything but bonds, and not to warrants issued by the municipality. The importance of the question would seem to have demanded clear and definite proof of the character of the indebtedness which the bond issue was intended to meet. The city clerk did not appear to know whether the indebtedness of the city was represented by bonds or warrants.

[3, 4] It was important to know when the Attorney General approved the bonds and when their registry took place in the comptroller's office, but this is left in doubt. We are undisposed to hold that a county or city can bring itself within the provisions of article 715, Rev. Stats. 1925, which creates prima facie validity for bonds that have been approved by the Attorney General and registered by the comptroller, by obtaining such approval and registry while a suit is pending to destroy the validity of the bonds by showing that no legal election had been held for their issuance. Such action would amount to fraud and would not be countenanced. The approval and registry of the bonds merely renders the bonds prima facie valid, and such prima facie validity might be destroyed by proof of the nullity and illegality of the bonds.

[5] The question of innocent purchaser for value, without notice, might arise in the case, under proper and sufficient facts, and the rights of the innocent purchaser would be protected by the courts. City of Tyler v. Tyler B. & L. Association, 99 Tex. 6, 86 S. W. 750; Lasater v. Lopez (Tex. Civ. App.) 202 S. W. 1039, affirmed 110 Tex. 179, 217 S. W. 373.

The facts in this case have not been fully developed, and the important issues involved in it demand a full investigation in order that an appellate court may be in a position to apply the law to the facts, and we deem it proper and necessary to remand the cause for a full and thorough consideration of all the facts and circumstances by the trial judge.

The judgment will be reversed and the cause remanded.