SAN ANTONIO UNION JUNIOR COLLEGE DISTRICT V.
PRICE DANIEL, ATTORNEY GENERAL.

No. A-1424. Decided December 3, 1947.
(206 S. W., 2d Series, 995.)

*A. V. Knight, Davis, Hall, Clemens & Knight,* all of San
San Antonio, for relator.

*Price Daniel,* Attorney General, *Ocie Speer, Harry M. Stanfield, W. T. Williams* and *George W. Sparks,* all Assistants Attorney General, for respondent.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is an original proceeding for mandamus filed by relator, a junior college district, to require respondent, as Attorney General, to approve certain refunding bonds which relator seeks to issue.

On December 15, 1945, pursuant to an election, relator issued $940,000.00 of Building, Site and Equipment Bonds, payable semi-annually on June 15 and December 15, of each year, and bearing interest at 1 1/4 per cent. per annum. They were duly approved, registered and sold under authority of Art. 2815h, Vernon's Annotated Civil Statutes.

These bonds contained no prepayment option, but the holder of $80,000.00 of them maturing on December 15, 1966, 1967, 1968, 1972, and 1974, offered to surrender his bonds for 76 refunding bonds of the district for $1,000.00 each to be dated June 15, 1947, to bear interest at 1 per cent. per annum and to mature serially on June 15, for the years 1948 through 1957, inclusive. Relator accepted this offer and its trustees ordered the issuance of its Building, Site and Equipment Refunding Bonds in the sum of $76,000.00, to effect the agreement. A transcript of all proceedings had to issue them was submitted to respondent for approval, but he refused on the ground that a junior college district is not authorized to issue refunding bonds.

Relator claims both express and implied authority to issue refunding bonds, by virtue of the following two provisions of our statutes:

"Sec. 5, Art. 2815h, V. A. C. S. The Board of Trustees, of Junior College Districts shall be governed in the establishment, management and control of the Junior College by the General Law goverening the establishment, management and control of Independent School Districts insofar as the General Law is applicable."

"Sec. 1, Art. 2815h-3b, V. A. C. S. * * * the governing boards of all public Junior Colleges, created and established under the laws of Texas, in any manner, shall have power to issue bonds for the construction and equipment of school buildings and the acquisition of sites therefor, and to provide for the interest and sinking fund for such bonds by levying of such taxes as will be necessary in this connection, subject to the limitations hereinafter imposed. Such governing boards shall also have power to levy and collect taxes for the support and maintenance of such Junior Colleges, provided that no bonds shall be issued and no taxes collected until authorized by vote of the majority of the qualified voters of the Junior College District in which such Junior College is located, at an election called for that purpose in accordance with the provisions of the General Law providing for similar elections in Independent School Districts. The election for the issuance of such bonds; for the levying of such tax or taxes, shall be ordered by such governing board upon petition signed by two hundred and fifty (250), or a majority, of the qualified property taxpaying voters residing in such district, praying for the issuance of such bonds and/or the levying of such tax or taxes. It shall be the duty of such board to order such election, and the same shall be conducted and the returns made to such board. The issuance of bonds for Junior College purposes, and the provision for the sinking fund for the retirement thereof, and the payment of interest and the levying of taxes for the support and maintenance of the Junior College, shall, in so far as same is applicable, be in accordance with the general election laws and the laws governing the issuance of bonds and the levying of taxes in Independent School Districts, * * *."

Although the original Act authorizing the establishment of junior colleges (Acts 1929, 41st Leg., ch. 290, p. 648) has been amended several times, sections 5 and 1 have not been materially changed. See Acts 1935, 44th Leg., ch. 57, p. 140; Acts 1936, 44th Leg., 3rd C. S., ch. 480, p. 1990; Acts 1937, 45th Leg., ch. 69, p. 134, ch. 76, p. 143, ch. 130, p. 248; Acts 1939, 46th Leg., Spec. Laws, ch. 36, p. 680, ch. 37, p. 684; Acts 1941, 47th Leg., ch. 5, p. 6, ch. 330, p. 535; Acts 1945, 49th Leg., ch. 191, p. 258; and Acts 1947, 50th Leg., ch. 70, p. 101.

Relator insists that it has express authority under these two sections to issue refunding bonds because they show the legislative intent to give junior college districts all powers conferred on independent school districts, particularly the power to issue refunding bonds, under Art. 2789, V. A. C. S. The argument is that Art. 2815h was intended merely as a framework for the establishment of junior college districts without any expression "in and by its own terms of all the powers, rights, duties and liabilities of such districts"; that it is fundamentally a reference act; that, therefore, such districts may issue refunding bonds because school districts may do so under the terms of Art. 2789.

While Art. 2815m is in some respects a reference statute, it is clearly not so in all. Analysis of Art. 2815h-3b, Sec. 1, shows that it accomplishes three things, namely, (1) it gives governing boards of junior college districts power (a) to issue bonds for constructing and equipping school buildings and for acquiring sites and (b) to liquidate those bonds by levying taxes; (2) it grants them power to levy and collect taxes for the support and maintenance of such colleges as they may construct and equip and acquire sites for; (3) it prescribes the _means_ by which those powers may be exercised to effect those purposes.

Manifestly, it is wholly unnecessary to go to the statutes relating to independent school districts to find out whether a junior college district has power to issue bonds and for what purposes they may be issued, when Sec. 1 plainly says they can be issued and clearly prescribes that the purpose of their issuance shall be to construct and equip school buildings and to acquire sites therefore. Moreover, it would be idle to refer to those statutes to determine whether relator can liquidate its bonds so issued, when Sec. 1 says it can, _by levying taxes_. If the question be how such districts can raise money to support and maintain their colleges after construction and equipment, Sec. 1 answers: by the "power to levy and collect taxes." As to those matters, then, Sec. 1 is clear, explicit and self-sufficient; so, as to then, it cannot reasonably be held to be merely a reference statute.

■ But it is not explicit as to the form and substance of these bonds, including the procedure for their issuance; it is not explicit as to how an election to authorize the bonds and taxes to pay them shall be conducted; it is not explicit as to how a sinking fund to liquidate the bonds shall be set up. Therefore,

since detailed instructions as to all those matters can be found in the statute relating to independent school districts, we clearly have the purpose of the Legislature when it said in Sec. 1, "The issuance of bonds for Junior College purposes, and the provisions for the sinking fund for the retirement thereof, and the payment of interest and the levying of taxes for the support and maintenance of the Junior College, shall, in so far as same is applicable, be in accordance with the general laws and the laws governing the issuance of bonds and the levying of taxes in Independent School Districts." There relator can get full directions as to the *procedure to be followed* if it would issue bonds; but as to the *purposes* for which it may issue them, it has complete instructions in Sec. 1, Art. 2815h-3b supra.

Since the procedure for bond issuance requires extended and detailed writing, the Legislature properly referred to other statutes on that subject in order to avoid encumbering our statute books by unnecessary repetition; but since it spoke specifically on the purposes for which relator has power to issue bonds, we may reasonably suppose that it did so fully. 50 Am. Jur., p. 57, Sec. 36. So we are obliged to hold that with respect to relator's power to issue bonds, Sec. 1 is complete within itself and therefore exclusive.

■ Much that has been said applies to the contention that Sec. 5, Art. 2815h, authorizes relator to issue refunding bonds. Its language is that the trustees of junior college districts shall be governed in the establishment, management and control of the junior *college* by the general laws governing the establishment, management and control of independent school districts in so far as those laws are applicable. There is, of course, a clear distinction to be drawn between the *district* and the *college,* which the district is designed to create, so we think the language is clearly limited to the authority of the trustees to direct the *college* and that it has no reference to their authority with respect to the *district,* which alone can issue bonds.

We are supported in this view by the construction which the Legislature itself put on section 5 by the language of the caption to the original Act (Acts 1929, 41st Leg., ch. 290, 648). As relating to Sec. 5, the language of the caption is: "An Act * * * providing for the *government* and *administration* of such Junior *Colleges* and the location of same * * *." (Italics ours.)

Moreover, both sections 5 and 1, supra, in substantially their present language, appeared in the original Act of 1929; and

all attorneys general since that time have consistently held that junior college districts have no power to issue refunding bonds. Since that official is charged with the duty of approval or disapproval of such bonds, his construction of the sections in question is entitled to great weight, and this court should not give a different construction unless we are convinced that his is wrong. Harris County v. Hammond (Civ. App.) 203 S. W. 445 (er. ref.).

In this connection, it is significant that although the Act of 1929, supra, has been amended several times in other particulars, the Legislature has not seen fit to amend sections 5 and 1 so as to avoid the construction the attorney general has consistently given it. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas, 21, 34, 52 S. W. (2d) 56, 62.

■ Finally, relator contends it has express power to issue refunding bonds because of the provisions of Sec. 4, of Art. 2815h, supra, which provides that "the said Board of Education of such Junior College District, under the provisions of this Act, shall in addition to all of the powers and duties vested in them by the terms of this Act, be furthermore vested with all the rights, powers, privileges, and duties conferred and imposed upon Trustees of Independent School Districts by the General Laws of this State, so far as the same may be applicable thereto and not inconsistent with this Act." While, for the reasons above stated, we think relator's proposition is untenable, it is enough to say that section 4, which first appeared as a part of Art. 2815 by Acts 1937, 45th Leg., ch. 130, p. 248, is limited by its own terms to a junior college established and maintained by an independent school district or by a city that has assumed control of its schools. It can, therefore, in no event, have reference to relator, which is a *union* junior college district.

■ In the alternative, relator asserts that the express power to issue original bonds under Art. 2815h implies the power to refund them.

In support of that proposition it relies principally on an annotation appearing in 135 A. L. R., p. 634, wherein, under the title "The General Rule," it is said: "It has been held in the great majority of cases in which the question annotated has arisen that the express power conferred on governmental units to issue bonds in the first instance includes, by necessary implication, the power to refund the original bonds." Cases from

fifteen jurisdictions, including the United States and Texas, are cited in support of that statement. While we have not examined all the cases cited, we have studied those form the United States and Texas courts; and we find that they do not support the proposition stated. The United States cases cited are Portsmouth Sav. Bank v. City of Springfield, 4 Fed., 276, and Portland Sav. Bank v. City of Evansville, 25 Fed., 389, both of which are circuit court decisions. In the former case only a part of the bonds sued on were refunding bonds; and the court says that since the bonds had "been issued for so long a time, the interest on them having been paid and their validity having been recognized again and again in after years by the city authorities" and since, therefore, "the equity of the holders of these bonds does seem so strong," it was too late for the city to question their validity. Portland Sav. Bank v. City of Evansville, supra, in no sense deals with implied power but holds that the city had express power under its charter to issue the bonds in suit. Moreover, the conclusion reached by the United States Supreme Court in Merrill v. Town of Monticello, 138 U. S., 673, 11 Sup. Ct., 441, 34 L. Ed., 1069, is contrary to the A. L. R. thesis. There the court was considering the validity of refunding bonds issued by the town of Monticello, Indiana, under a statute of that state which authorized the council of a town to issue bonds "for the purchase and erection of lands and buildings for school purposes only." Quoting from an earlier decision in Hopper v. Covington, 118 U. S., 148, the Supreme Court said: "The general statute * * * authorized towns to issue bonds for the purchase and erection of lands and buildings for school purposes only. But the bonds in suit were not issued for either of the purposes named, but to retire and pay off the bonds of 1869. The town had no power to pay off those bonds in this way, vis., by the issue of new bonds, or it could perpetuate a debt forever. Bonds once issued for a lawful purpose must be paid by taxation. This is manifest from the provisions which require a tax to be levied each year 'sufficient to pay the annual interest, with an addition of not less than five cents on the hundred dollars to create a sinking fund for the liquidation of the principal.' When bonds are once issued for a lawful purpose, the town is *functus officio* as to that matter. To argue that the old bonds are a *debt* for school purposes which may be liquidated by new bonds is a refinement of construction which the sound sense of the law rejects." The only Texas case cited in support of the A. L. R. note is Griffith v. Buchanan (Civ. App.) 5 S. W. (2d) 211. The holding in that case is that when a city has regularly issued bonds by authority of a majority of the taxpaying voters of the city, it can issue refunding bonds *with-*

*out again submitting the question to the voters,* because it is expressly authorized so to issue them by Art. 717, R. S., 1925.

We think the sounder rule is that the power of a municipal corporation to issue refunding bonds cannot arise by implication. "The power to issue new negotiable bonds having the incidents of negotiable paper, to take the place of a former issue cannot be impiled merely from power to make the original issue." Dillon, Municipal Corporations (5th Ed.) Vol. 2, p. 1494. "Power to issue the original bonds does not include power to issue new bonds to take their place." McQuillin, Municipal Corporations (2nd Ed.) Vol. 6, Sec. 2441, p. 166. "Power to issue renewal or refunding bonds does not result merely because of the existence of municipal indebtedness." 44 C. J., p. 1186, Sec. 4157. In holding that the power to issue refunding bonds cannot be implied fro mstatutory power to issue original bonds, the Supreme Court of Illinois said, "If it can, then, against the policy of our laws and without legislative authority, a municipal debt may forever be kept alive, and the municipality be subjected to the many disabilities and hardships which the law imposes on the makers of negotiable instruments when such instruments are held by innocent holders for value before maturity." Coquard v. Village of Oquawka, 192 Ill. 355, 61 N. E., 660, 662.

While the precise question at bar has never been decided by this court, it was said in Lasater v. Lopez, 110 Texas, 179, 217 S. W., 373, that, "without special authority," a commissioners' court "is without the power to issue negotiable securities, depriving the county of true defenses against the original creditor. It is not a power to be implied. It does not exist unless expressly conferred by law. Such is the established doctrine in this State, and has been from an early time." Again, it was stated in Keel v. Pulte (Com. App.) 10 S. W. (2d) 694, "The power to issue negotiable paper for public improvements, or for money borrowed for the purpose of acquiring such improvements, is a power which is regarded as being beyond the scope of power of the governing body of a city or a county unless it be specially granted. This extraordinary power, when granted, can be exercised only in the mode and for the purposes specified in the grant. Foster v. City of Waco, 113 Texas, 352, 354, 255 S. W., 1104." So it was recognized in Henderson County v. Allred, 120 Texas, 483, 40 S. W. (2d) 17, that the Legislature can authorize a county to issue refunding bonds and that bonds so issued are valid.

And the Legislature has several times bestowed upon mu-

nicipal corporations the power to issue refunding bonds, on the assumption that such power does not arise by implication from express authority to issue original bonds. For example,. Art. 725, R. S., 1925, was enacted in 1901 to authorize counties to issue refunding bonds, and the emergency clause recited that there was "no law authorizing counties to fund bonded indebtedness issued since January 1, 1895." Acts 1901, 27th Leg., ch. 13, p. 16. When Art. 752, V. A. C. S., was passed in 1929 to empower commissioners' courts to refund road bonds, the emergency clause declared that those courts already had the power to refund county bonds but did not have that power "in reference to bonds of political subdivisions or road districts." Acts 1929, 41st Leg., 2nd. C. S., ch. 74, p. 149. Similar enactments have been made, under substantially the same recitations, with respect to the issuance of refunding bonds by school districts, Acts 1933, 43rd Leg., ch. 32, p. 62, Acts 1935, 44th Leg., ch. 331, p. 760; by water improvement districts, Acts 1933, 43rd Leg., ch. 9, p. 201; by fresh water supply districts, Acts 1935, 44th Leg., ch. 46, p. 121; by drainage districts, Acts 1935, 44th Leg., ch. 47, p. 123; and by conservation and reclamation districts, Acts 1935, 44th Leg.,* ch. 295, p. 694. This clear, often-expressed view of the Legislature that municipal corporations have no implied power to issue refunding bonds is not binding on us but it has value and weight in the construction of statutes. See American Indemnity Co. v. City of Austin, 112 Texas, 239, 246 S. W., 1019; Sedwick, Statutory and Constitutional Law, p. 252.

Therefore, we hold that relator has no authority to issue the bonds in question.

It may seem good policy for relator to be permitted to save $4,000.00 on its outstanding bonds and to reduce the interest rate by 1/4 per cent. On the other hand, when the taxpayers of relator district voted the original bonds those here involved were made to mature in the years 1966 to 1974, thereby casting the burden of their payment on future taxpayers; but it is now proposed to cast them upon the taxpayers of the period from 1948 to 1957, thereby placing an additional burden upon them, a burden not within the contemplation of the voters when they authorized the original bonds to be issued. If that consideration is to fall in favor of the proposed saving of principal and interest,. the Legislature, not relator, must say so. As said in Village of Oquawka v. Graves, 82 Fed., 568, wherein the town sought to save some 50 per cent. of its original bonded indebtedness by issuing refunding bonds, "If there were no au-

thority in the municipal corporation to issue bonds such as those here sued on, we do not see how the mere measure of convenience or advantage to the town can help the matter. * * * It is not a question of advantage which the taxpayers may derive from the exercise of the power claimed, but it is a question of the right to exercise the power."

Relator's petition is denied.

Opinion delivered December 3, 1947.

No motion for rehearing filed.

Associate Justice Simpson dissenting, without written opinion.