**TEXAS AND NEW ORLEANS RAILROAD COMPANY et al., Appellants,**

v.

**Ernest O. THOMPSON et al., Appellees.**

**No. 10332.**

Court of Civil Appeals of Texas.

Austin.

Nov. 2, 1955.

W. D. White, Rollo E. Kidwell, Dallas, for Chemical Express and Ray Smith.

Kenneth McCalla, Austin L. Hatchell, Walter Caven, Austin, Baker, Botts, Andrews & Shepherd, Hutcheson, Taliaferro & Hutcheson, Houston, of counsel, for Texas & New Orleans R. R. Co.

Kelley, Looney, McLean & Littleton, Edinburg, for Materials Transp. Co.

John Ben Shepperd, Atty. Gen., William W. Guild, Asst. Atty Gen., for Railroad Commission of Texas.

GRAY, Justice.

Appellants brought this suit against appellees seeking to have adjudged void an order of appellee, Railroad Commission of Texas, granting to appellee, Materials Transportation Company, a contract carrier permit authorizing it to transport:

"Bulk Cement in tank type twin-screw trailers, between all points within a 300-mile radius of Corpus Christi, Texas, for Halliburton Portland Cement Company, located at or near Corpus Christi, Texas."

Appellants also prayed that appellee, Materials Transportation Company, be enjoined from operating under said permit.

At a nonjury trial all relief was denied appellants.

We will later refer to appellee the Railroad Commission of Texas as the Commission and to appellee Materials Transportation Company as Materials.

The order complained of is dated June 18, 1954, at which time Materials was the holder of a certificate of public convenience and necessity authorizing it to operate a specialized motor carrier service to transport:

"Sand, Gravel, Caliche, Hot and Cold Mix Road Surfacing Materials,

Cement in Bulk (Except Moving As Oilfield Supplies,) Crushed Rock, Rip-Rap and Dirt, and other commodities moving in dump trucks for construction purposes, from places of storage, sale, mixture, manufacture and gravel and rock pits; or railheads to job sites or place of storage in route to job sites; to, from, and between all points in Texas where distance from origin to destination does not exceed 150 miles."

Appellants assert that Materials was operating as a common carrier under its certificate above mentioned and that the complained of order is void because in violation of section 6–bb of Art. 911b, Vernon's Ann.Civ.St., which is: .

"No application for permit to operate as a contract carrier shall be granted by the Commission to any person operating as a common carrier and holding a certificate of convenience and necessity, nor shall any application for certificate of convenience and necessity be granted by the Commission to any person operating as a contract carrier nor shall any vehicle be operated by any motor carrier with both a permit and a certificate."

The evidence does not present any controversy as to Materials' operations under its certificate. For that reason we will not discuss the evidence but will concern ourselves with the question of whether Materials, on June 18, 1954, was operating as a common carrier within the meaning of Art. 911b, supra. Section 1 of that statute defines various terms as therein used but the term common carrier is not there defined. However the term is used in various sections of that statute other than section 6–bb. These sections will be later noticed.

In 1929, the 41st Legislature, Acts 1929, 41st Leg.R.S., ch. 314, p. 698, defined motor carriers transporting property for compensation or hire, placed them under the regulations of the Commission, and, for the purposes of the Act, classified such carriers into Class A and Class B. The Act provided that Class A motor carriers must procure a certificate from the Commission declaring that the public convenience and necessity require such operation, and that Class B motor carriers must procure a permit from the Commission. However the Act does not contain a definition of the required certificate or permit.

By Section 2 of the Act it is declared that:

"All motor carriers as defined in the preceding Sections are hereby declared to be common carriers and subject to regulation by the State of Texas, and shall not operate any motor propelled vehicle for the purpose of transportation or carriage of property for compensation or hire over any public highway or street in the State, except in accordance with the provisions of this Act; * * *."

The foregoing clearly demonstrates that in 1929, the Legislature classified all motor carriers operating under authority of the Commission as common carriers.

The next amendment of the 1929 Act pertinent to our inquiry here was by the 42nd Legislature in 1931. Acts 42nd Leg. 1931, R.S., ch. 277, p. 480. This Act enlarged the definition of the term motor carrier and defined other terms used in the Act including the terms certificate, permit and contract carrier. Motor carriers were not classified. (Except by the authority granted for their operation.) Section 2 of the 1929 Act was amended to provide that no motor carrier as there defined

"* * * shall operate any motor-propelled vehicle for the purpose of transportation or carriage of property for compensation or hire over any public highway in the State except in accordance with the provisions of this act; * * *."

The Act further provided that motor carriers could not operate: (1) as common carriers without having first obtained a certificate of convenience and necessity,

and (2) as contract carriers without having first obtained a permit under the terms of the Act.

By Section 6(c) of the Act it is provided that a permit shall not be granted to a contract carrier if in the opinion of the Commission the service of such contract carrier will impair the efficient public service of any authorized common carrier then adequately serving the same territory. It is significant that the term "common carrier" is used and no reference is made to "motor carriers" serving the same territory. Section 6-aa of the Act provided that the rates to be charged by contract carriers would not be less than the rates prescribed for common carriers for substantially the same service.

It is in the 1931 Act where Section 6-bb supra is first found.

It is to be noted that the 1931 Act authorizes the operation of motor carriers under a permit (for contract carriers) and under a certificate of convenience and necessity.

The fact that the Act, Section 5, provides: (1) that no motor carrier shall operate as a common carrier without having first obtained a certificate of convenience and necessity without making any provision for different operation (other than contract carriers) and (2) for the Commission to issue all motor carriers then lawfully operating under permanent certificates of public convenience and necessity theretofore issued to them new certificates "covering the same routes that said common carrier[s] shall have been operating over, and no more", evidences a legislative intent consistent with that expressed in the 1929 Act.

In 1941, the 47th Legislature at its Regular Session amended the above Acts and for the first time the term "'Specialized Motor Carrier'" was defined. Acts 47th Leg. 1941, R.C., ch. 442, p. 713, § 2(i). That being the definition contained in present Art. 911b supra § 1(i). The Act contains a declaration of policy which in part is:

"Section 1. Declaration of Policy. It is hereby declared to be the policy of the Legislature to create a class of common carrier motor carriers designated as 'specialized motor carriers' to engage in the business of transporting for compensation or hire over the highways in this State over irregular routes on irregular schedules with 'specialized equipment,' oil field equipment, household goods, and used office furniture and equipment, livestock, milk, livestock feedstuff, grain, farm machinery, timber in its natural state, wool, mohair, pipe used in the construction and maintenance of water lines and pipe lines, and in addition, all commodities which by reason of length, width, weight, height, size, or other physical characteristic, require the use of special devices, facilities, or equipment for their loading or unloading, and all commodities which require special facilities or special motor vehicles for adequate, efficient, or safe transportation; to regulate such carriers in the public interest * * *."

That Act clearly stated it was the legislative intent to classify specialized motor carriers as common carriers and the Legislature has not since that time declared its policy to be otherwise.

Section 5a of Art. 911b supra authorizes the Commission to issue certificates of convenience and necessity to specialized motor carriers. Sections 5a(c) and 5a(d) pertain to the jurisdiction of the Commission to hear applications for and the granting of certificates of convenience and necessity to specialized motor carriers, and in each of the sections the language "* * * a 'specialized motor carrier' or any other common carrier * * *" is used. Section 5a(e) provides:

"Except where otherwise provided, applications for and holders of certificates of public convenience and necessity, as provided for in this Section, shall be subject to all of the provisions of the Act relating to common carriers by motor vehicle."

Section 5a(d) provides that before any application for a certificate of convenience and necessity authorizing the operation of a specialized motor carrier shall be granted the Commission shall hear, consider and determine said application in accordance with sections 8, 9, 11, 12, 13, 13a, 14 and 15. Section 8 provides in part that the Commission shall determine

"* * * if there exists a public necessity for such service, and if public convenience will be promoted by granting said application and permitting the operating of motor vehicles on the highways designated in such application as a common carrier for hire."

The other sections deal with evidentiary and procedural matters and operating requirements.

Section 5a(h) provides that identification plates furnished by the Commission shall be displayed and firmly fixed on the front and rear of specialized motor vehicles and that

"The plates for vehicles operated by 'specialized motor carriers' shall be different in design to the plates for common carrier vehicles and the plates for contract carrier vehicles."

This language however cannot be said to evidence a legislative intent to exclude specialized motor carriers from the classification of common carriers because that section was enacted by the 47th Legislature and is a part of the Act containing the above quoted declaration of policy. Acts 47th Leg., 1941, ch. 442, supra, p. 718, § 5a (h).

From what we have said it clearly appears that the Legislature has classified specialized motor carriers as common carriers; that such classification is consistent with the legislative intent expressed in the several Acts of the Legislature, and that such intent is reflected by the language of present Art. 911b.

Appellees argue that the Commission has construed Art. 911b supra and determined that Section 6–bb supra does not apply to specialized motor carriers; that valuable rights have been acquired and that we should adopt such administrative construction. They appear to argue that because the Legislature did not define the term "common carrier" the statute is ambiguous. This argument ignores the declared policy and purpose of the 47th Legislature "to create a class of common carrier motor carriers designated as 'specialized motor carriers' * * *" together with the use of the term "common carrier" throughout Section 5a of the statute.

We think the construction is clearly erroneous and should not be followed. 39 Tex. Jur. Sec. 126, p. 236. Further we think that the classification given specialized motor carriers by the Legislature that defined the term and authorized their operation has value and must be given weight in the construction of the Act before us. San Antonio Union Junior College Dist. v. Daniel, 146 Tex. 241, 206 S.W.2d 995.

The fact that rights may be adversely affected by our decision is a matter addressed to the Legislature. 39 Tex.Jur. Sec. 119, p. 223.

It is our opinion and we hold that the complained of order violated the plain terms of Section 6–bb supra and that the same is void.

The judgment of the trial court is reversed and judgment is here rendered that the order of the Commission of June 18, 1954 is void and without legal effect and that Materials be enjoined from further operating under the permit issued by reason of said order.

Reversed and rendered.