OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

October 10, 2000

The Honorable Louis W. Conradt, Jr.
Criminal District Attorney
Kaufman County Courthouse
Kaufman, Texas 75142

Opinion No. JC-0291

Re: Whether a county development district created under chapter 383 of the Local Government Code is authorized to levy ad valorem taxes and whether, under chapter 383, a county development district may construct infrastructure for a residential subdivision (RQ-0230)

Dear Mr. Conradt:

You ask whether a county development district created under chapter 383 of the Local Government Code is authorized to levy ad valorem taxes and whether, under chapter 383, a county development district may construct infrastructure for a residential subdivision.[1] We conclude that a county development district is not authorized to levy ad valorem taxes. We also conclude that a county development district may undertake only those projects that are consistent with the purpose of chapter 383 – "providing incentives for the location and development of projects in certain counties to attract visitors and tourists." TEX. LOC. GOV'T CODE ANN. § 383.002 (Vernon 1999) (statement of legislative intent).

We begin with a brief review of Local Government Code, chapter 383, the County Development District Act, ("chapter 383" or the "Act"), which permits the commissioners court of a county with a population of 400,000 or less, on the petition of landowners in a proposed district, to create a county development district. See id. §§ 383.001 (title); .021 (creation of district); .022 (landowner petition).

The Act includes both a statement of legislative intent and legislative findings that indicate that the purpose of a county development district is to develop public improvements to attract visitors and tourists to the county. The statement of legislative intent provides that the chapter "furthers the public purpose of developing and diversifying the economy of this state by providing incentives for the location and development of projects in certain counties to attract visitors and tourists." Id. § 383.002. Section 383.003 consists of the following legislative findings:

---

[1]See Letter from Honorable Louis W. Conradt, Jr., Kaufman County Criminal District Attorney, to Honorable John Cornyn, Texas Attorney General (May 3, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

> (a) Small and medium-sized counties in this state need incentives for the development of public improvements to attract visitors and tourists to those counties, and those counties are at a disadvantage in competing with counties in other states for the location and development of projects that attract visitors by virtue of the availability and prevalent use of financial incentives in other states.

> (b) The means and measures authorized by this chapter are in the public interest and serve a public purpose of this state in promoting the economic welfare of the residents of this state by providing incentives for the location and development in certain counties of this state of projects that attract visitors and tourists and that result in employment and economic activity.

> (c) The creation of development districts is essential to the accomplishment of Section 52-a, Article III, Texas Constitution, and to the accomplishment of the other public purposes stated in this chapter and further serves the purpose of Section 59, Article XVI, and Section 52, Article III, Texas Constitution.

*Id.* § 383.003.

Section 383.061 provides that a county development district has the following general powers:

> (a) A district may acquire and dispose of projects and has all of the other powers, authority, rights, and duties that will permit accomplishment of the purposes for which the district was created.

> (b) The district has the powers of a municipal management district created under Chapter 375 to the extent not inconsistent with this chapter.

> (c) The district has the power to provide for general promotion and tourist advertising of the district and its vicinity and to conduct a marketing program to attract visitors, any of which may be conducted by the district pursuant to contracts for professional services with persons or organizations selected by the district.

*Id.* § 383.061. The term "project" is defined by reference to section 4B(a)(2) of the Development Corporation Act of 1979, *see id.* § 383.004(8), which provides as follows:

"Project" means land, buildings, equipment, facilities, and improvements included in the definition of that term under Section 2 of this Act, and includes job training as provided by Section 38 of this Act. For purposes of this section, the term includes recycling facilities, and land, buildings, equipment, facilities, and improvements found by the board of directors to:

(A)   be required or suitable for use for professional and amateur (including children's) sports, athletic, entertainment, tourist, convention, and public park purposes and events, including stadiums, ball parks, auditoriums, amphitheaters, concert halls, learning centers, parks and park facilities, open space improvements, municipal buildings, museums, exhibition facilities, and related store, restaurant, concession, and automobile parking facilities, related area transportation facilities, and related roads, streets, and water and sewer facilities, and other related improvements that enhance any of those items;

(B)   promote or develop new or expanded business enterprises, including a project to provide public safety facilities, streets and roads, drainage and related improvements, demolition of existing structures, general municipally owned improvements, as well as any improvements or facilities that are related to any of those projects and any other project that the board in its discretion determines promotes or develops new or expanded business enterprises; or

(C)   be required or suitable for the promotion of development and expansion of affordable housing, as defined by 42 U.S.C. Section 12745.

TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)(2) (Vernon Supp. 2000).

Subchapter E authorizes a county development district to issue bonds to defray the costs of a project. *See* TEX. LOC. GOV'T CODE ANN. §§ 383.081-.084 (Vernon 1999). Subchapter F expressly authorizes a county development district to impose a sales and use tax if authorized by a majority of the qualified voters of the district voting at an election called for that purpose. *See id.* § 383.101. The sales and use tax must be approved by the voters in the election to confirm the creation of the district, *see id.* §§ 383.030-.034, and the district's board may subsequently increase or decrease the tax rate only with the approval of the electorate, *see id.* § 383.104. Taxes collected under subchapter F "may be used only for the purposes for which the district was created." *Id.*

§ 383.105. In addition, section 352.107 of the Tax Code authorizes a county commissioners court in a county with a population of less than 400,000 to impose a hotel occupancy tax within the boundaries of a county development district and to remit the taxes to the district, which may use the taxes "for the purposes for which sales and use tax proceeds may be used by the district." TEX. TAX CODE ANN. § 352.107 (Vernon Supp. 2000). A district may pledge the revenue derived from these taxes to the payment of bonds issued by the district. *See* TEX. LOC. GOV'T CODE ANN. § 383.105 (Vernon 1999); *see also id.* § 383.082(1) (authorizing board of district to provide for payment on bonds from taxes).

First, we consider whether a county development district is authorized to levy an ad valorem tax. In considering this question, we are guided by the legal principle that "[t]he power to tax belongs to the sovereignty. It can only be exercised by a subordinate corporate body when delegated to it either by the Constitution or by the legislature . . . ." *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940). As a result, "such power cannot exist by implication. A political subdivision of a state . . . has no inherent power to levy taxes, and if the power exists at all, it must be expressly granted." *Ripley v. Trinity River Canal and Conservancy Dist.*, 88 S.W.2d 752, 756 (Tex. Civ. App.–Dallas 1935, writ ref'd) (cited with approval in *Mann*, 142 S.W.2d at 948-49). The power to tax must be "'plainly and unmistakably conferred.'" *State v. Houston & Tex. Cent. Ry. Co.*, 209 S.W. 820, 822 (Tex. Civ. App.–Galveston 1919, no writ) (citation omitted) (cited with approval in *Mann*, 142 S.W.2d at 948). Finally, a statute conferring the power to tax "'is to be strictly construed, and must be closely followed.'" *Mann*, 142 S.W.2d at 948 (citation omitted). Accordingly, we review chapter 383 to determine whether the legislature has plainly and unmistakably conferred county development districts with the power to levy an ad valorem tax.

Chapter 383 does not plainly and unmistakably confer county development districts with the power to levy an ad valorem tax. Chapter 383 makes no mention of ad valorem taxes. The only tax that chapter 383 expressly authorizes a county development district to levy is the sales and use tax. Chapter 383 provides for this power and its execution in great detail. *See* TEX. LOC. GOV'T CODE ANN. §§ 383.030 (requiring temporary board of directors to conduct election in the district to confirm creation of the district and "authorize a sales and use tax"); .031 (requiring order calling an election to state "proposed rate of sales and use tax for the district"); .033 (required ballot language, including language regarding sales and use tax); .101 (authorizing sales and use tax); .102 (rules governing imposition, computation, administration, and governance of sales and use tax); .103 (permissible sales and use tax rates); .104 (procedures to abolish or change sales and use tax rate); .105 (use of sales and use tax); .106 (limitations on sales and use tax rate) (Vernon 1999). The detailed provision in chapter 383 for the sales and use tax suggests that the legislature did not intend county development districts to wield any other taxing authority.

Nor is there an independent constitutional basis for such a tax. The chapter 383 legislative findings state that a county development district "serves the purpose of Section 59, Article XVI, and Section 52, Article III, Texas Constitution," *id.* § 383.003(c), two constitutional provisions that authorize county, road district, and conservation and reclamation district ad valorem taxes. *See* TEX.

CONST. art. III, § 52; *id.* art. XVI, § 59. Neither constitutional provision provides express authority for a county development district to levy an ad valorem tax without implementing legislation.

We have received several briefs urging us to conclude that county development districts are authorized to levy ad valorem taxes by reference to other statutory provisions. A brief submitted on behalf of the Kaufman County Development District No. 1, for example, contends that county development districts are authorized to levy ad valorem taxes by section 383.081 of the Local Government Code, which provides that a district may issue bonds "for the purpose of defraying all or part of the cost of any project as provided in this chapter." TEX. LOC. GOV'T CODE ANN. § 383.081 (Vernon 1999).[2] Section 383.081 also states that sections 375.201 through 375.208 of the Local Government Code apply to a county development district "to the extent not inconsistent with this chapter." *Id.* Chapter 375 of the Local Government Code establishes municipal management districts. Sections 375.201 through 375.208 comprise subchapter J of chapter 375, which governs the authority of municipal management districts to issue bonds. The brief contends that because section 375.201 permits a municipal management district to issue bonds payable from ad valorem taxes, county development districts must also have the authority to levy ad valorem taxes to pay their bonds. *See* KCDD Brief, note 2, at 9-10.

The brief also relies on section 383.061(b), which provides that a county development district "has the powers of a municipal management district created under Chapter 375 to the extent not inconsistent with this chapter." TEX. LOC. GOV'T CODE ANN. § 383.061(b) (Vernon 1999); *see also* KCDD Brief, note 2, at 10-12. The brief notes that under section 375.091(a), a municipal management district has the same powers as a conservation and reclamation district created under article XVI, section 59 of the Texas Constitution, "including those conferred by Chapter 54, Water Code," *see* TEX. LOC. GOV'T CODE ANN. § 375.091(a) (Vernon 1999), and that municipal utility districts created under chapter 54 of the Water Code are expressly authorized to levy ad valorem taxes to pay bonds, *see* TEX. WATER CODE ANN. § 54.601 (Vernon 1972). *See* KCDD Brief, note 2, at 10-12.

We disagree that references in chapter 383 to provisions in chapter 375 establish express statutory authority for county development districts to levy ad valorem taxes. Given the special nature of the power to levy ad valorem taxes and the courts' insistence that the power to tax be expressly conferred, we believe that had the legislature intended to authorize county development districts to levy ad valorem taxes, it would have made express mention of that power in chapter 383. Indeed, we believe that the comparison between the chapters 375 and 383 is instructive. Unlike chapter 383, which makes no mention of ad valorem taxes, chapter 375 expressly authorizes municipal management districts to levy ad valorem taxes. Section 375.091(c) expressly provides that a municipal management district has all the powers of road districts and road utility districts created under article III, section 52 of the Texas Constitution, "including the power to levy ad valorem taxes for . . . roads and turnpikes" and "mass transit systems." TEX. LOC. GOV'T CODE ANN.

---

[2]Brief from Mr. Tom Leonard, Leonard, Hurt, Frost, Lilly & Levin, P.C., Attorneys at Law, to Honorable John Cornyn at 9-10 (July 23, 2000) (on file with Opinion Committee) [hereinafter KCDD Brief].

§ 375.091(c) (Vernon 1999). In addition, chapter 375 specifically provides for the approval by the voters of any bonds payable from taxes. Under section 375.244, bonds payable from taxes may not be issued "unless approved by a majority or any larger percentage if required by the constitution of the qualified voters in the district voting at an election for that purpose." *Id.* § 375.244(a). Chapter 383 contains no such provisions and it would not be appropriate for this office to insert them into the statute. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[E]very word excluded from a statute must also be presumed to have been excluded for a purpose. Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision."); *see also Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (stating that language excluded from a statute "must . . . be presumed to have been excluded for a purpose").

Our conclusion that the power of a county development district to levy ad valorem taxes is not supported by general references to the statutory authority of other entities, with absolutely no mention of the power to levy ad valorem taxes in chapter 383, is also supported by comparison of chapter 383 to other statutes that expressly provide the authority to levy ad valorem taxes in accordance with chapter 375. Significantly, the legislature has expressly vested a number of entities with the power to levy ad valorem taxes in accordance with chapter 375. Chapter 376 of the Local Government Code establishes ten specific municipal management districts. Eight of these districts are expressly provided "the power to impose ad valorem taxes . . . in accordance with Chapter 375." *See* TEX. LOC. GOV'T CODE ANN. §§ 376.012(a)(5) (powers of Houston Downtown Management District); .052(a)(4) (powers of Westchase Area Management District); .090(a)(4) (powers of Greater Greenspoint Management District); .122(4) (powers of First Colony Management District); .221(4) (powers of Harris County Improvement District No. 2); .271(4) (powers of Greater East End Management District); .313(c) (powers of Midtown Management District);[3] .311(4) (powers of East Downtown Management District)[4] (Vernon 1999 & Supp. 2000). In addition, one of the special municipal management districts is authorized to levy ad valorem taxes for a purpose specified in chapter 375, but in accordance with chapter 49 of the Water Code, rather than chapter 375. *See id.* § 376.160(6) (Vernon Supp. 2000) (powers of Upper Kirby Management District). Chapter 383 lacks any such express reference to the authority to levy ad valorem taxes in accordance with chapter 375. If the legislature had intended to vest county development districts with the authority to levy ad valorem taxes in accordance with chapter 375, it would have done so expressly, as it did in these statutes in chapter 376. This office cannot insert the power to levy an ad valorem tax into chapter 383. *See Laidlaw Waste Sys. Inc.*, 904 S.W.2d at 659; *Cameron*, 618 S.W.2d at 540.

Finally, where a statute provides for and limits a power in some detail, it is not appropriate to adopt additions to that power by statutory reference to the powers of similar entities, even where the legislature has generally referenced those other entities' powers. *See San Antonio Union Jr. College Dist. v. Daniel*, 206 S.W.2d 995, 997 (Tex. 1947) (refusing to find junior college district

---

[3]As added by Act of May 26, 1999, 76th Leg., R.S., ch. 1017, § 1, 1999 Tex. Gen. Laws 3801.

[4]As added by Act of May 29, 1999, 76th Leg., R.S., ch. 1493, § 1, 1999 Tex. Gen. Laws 5141.

authority to issue refunding bonds in referenced statutes governing school districts because legislature spoke specifically on purposes for which junior college district could issue bonds; "we may reasonably suppose that it did so fully. . . . [The statute] is complete within itself and therefore exclusive."). Because the legislature has spoken specifically with respect to the taxes a county development district is authorized to levy, we may reasonably conclude that it has done so fully and exclusively. Given that chapter 383 speaks fully and exclusively to county development districts' authority to tax, it is not appropriate to incorporate the power to levy an ad valorem tax by reference to the powers of municipal management districts under chapter 375. *Cf. id.* And, given that chapter 383 fully and exclusively governs the authority of a county development corporation to levy taxes, the power to levy ad valorem taxes granted to municipal management districts by chapter 375 is inconsistent with the authority conferred on county development districts by chapter 383. *See* TEX. LOC. GOV'T CODE ANN. §§ 383.061(b) (stating that "[t]he district has the powers of a municipal management district created under Chapter 375 *to the extent not inconsistent with this chapter.*"); .081 ("Sections 375.201 through 375.208 [governing the authority of a municipal management district to issue bonds] apply to a district *to the extent not inconsistent with this chapter.*") (Vernon 1999) (emphasis added).

Next, we address whether a county development district may construct infrastructure for a new residential subdivision. *See* Request Letter, *supra* note 1, at 3. We understand that the county development district in your county has undertaken a project to finance water, sewer, drainage and road facilities to serve homes over 150 acres, an elementary school, an office building and strip mall, a day care facility, 120 acres of parks and open space, a swim center, a church, 50 acres of right-of-way and streets, and water supply and sewage treatment facilities to serve an additional 400 acres. *See* KCDD Brief, *supra* note 2, at 3. We conclude that a county development district is not authorized to construct infrastructure for a residential subdivision unless the project will promote and develop tourism in the county.

A county development district is authorized to "acquire and dispose of projects and has all of the other powers, authority, rights, and duties that will permit accomplishment of the purposes for which the district was created." TEX. LOC. GOV'T CODE ANN. § 383.061(a) (Vernon 1999); *see also id.* § 383.105 (county development district may use sales and use taxes collected under chapter 383 only for the "purposes for which the district was created"). Although the term "project" is broadly defined by reference to a definition of that term in the Development Corporation Act of 1979, *see id.* § 383.004(8) (defining "project" by reference to article 5190.6, section 4B(a)(2) of the Revised Civil Statutes), various provisions of chapter 383 make it clear that county development district projects must be limited to the purpose of attracting visitors and tourists. As its statement of legislative intent conveys, the overarching purpose of chapter 383 is to provide "incentives for the location and development of projects in certain counties to attract visitors and tourists." *Id.* § 383.002. That a county development district is limited to projects consistent with this purpose is also clear from the legislative findings in section 383.003, which states that smaller counties need "incentives for the development of public improvements to attract visitors and tourists to those counties," *id.* § 383.003(a), and declares that the means and measures authorized by chapter 383 serve the public purpose of promoting economic welfare by providing incentives for "projects that

attract visitors and tourists and that result in employment and economic activity," *id.* § 383.003(b). Furthermore, a petition proposing a county development corporation must state that the district "will serve the purpose of attracting visitors and tourists to the county," *id.* § 383.023(5), and, upon receiving a petition, the commissioners court must determine whether a proposed district and project "would serve the public purpose of attracting visitors and tourists to the county," *id.* § 383.027.

In support of the proposition that a county development district may construct residential development infrastructure, it has been suggested that, under chapter 383, the term "project" includes any improvement that causes people to come and go from an area because, although the term "tourist" means a person who travels to a destination for recreation or pleasure, the word "visitor" should be broadly defined to mean "a person who goes or comes to a particular place" for any other reason. KCDD Brief, *supra* note 2, at 18. The brief submitted by the Kaufman County Development District No. 1 contends, for example, that the term "visitor" should be construed to include people who come to a location to purchase houses, to work in office and retail buildings, to build homes, to perform construction contracts, to operate parks, roads, and utility systems, or to sell goods and services. *See id.* at 18-19. We disagree with this expansive reading of the term for two reasons.

First, we believe that it is clear from the face of chapter 383 that the phrase "visitors and tourists" is intended to refer to people who travel for recreation or pleasure, rather than people who come and go from an area for any reason. The ballot language for an election approving the creation of a county development district and the sales and use tax levy must state that the district is created and the tax is to be used "for the promotion and development of tourism," TEX. LOC. GOV'T CODE ANN. § 383.033(b) (Vernon 1999). Similarly, the ballot language in an election to decrease or abolish the sales and use tax must indicate that the tax is "used for the promotion and development of tourism." *Id.* § 383.104(b); *see also Robbins v. Limestone County*, 268 S.W. 915, 919 (Tex. 1925) (taxes levied and collected for particular purpose may not be diverted to purposes other than for which they were voted). The legislature's selection of this language to inform voters of the purpose of a county development district indicates that the legislature intended county development districts to undertake projects to promote and develop tourism rather than general, everyday comings and goings.

Furthermore, chapter 383's statement of purpose and legislative findings establish that the Act is intended to foster economic development by authorizing projects that attract tourists rather than general economic development. By contrast, a number of other statutes establish special entities, such as municipal management districts and development corporations, to finance projects to promote general economic development. *See, e.g.,* TEX. LOC. GOV'T CODE § 375.001(b) (Vernon 1999) ("The creation of each [municipal management] district is necessary to promote, develop, encourage, and maintain employment, commerce, economic development, and the public welfare in the commercial areas of municipalities and metropolitan areas of this state."); TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 2000) (authorizing creation of development corporations to promote business development). Chapter 383 does not authorize general economic development projects.

As we have noted, chapter 383 vests county development districts with the powers of municipal management districts created under chapter 375. Although one could argue that chapter 383 vests county development districts with the general authority to promote economic development by reference to chapter 375, this construction is foreclosed by chapter 383's clear statement of purpose and the legislative findings. *See* TEX. LOC. GOV'T CODE ANN §§ 383.002, .003 (Vernon 1999). The general purpose of municipal management districts to promote general economic development is inconsistent with the more narrow purpose of county development districts to promote the economic welfare of residents of this state by providing for projects that attract visitors and tourists. *See id.* § 383.061(b) (noting that "[t]he district has the powers of a municipal management district created under Chapter 375 *to the extent not inconsistent with this chapter.*") (emphasis added). Clearly, the purpose of chapter 383 is more limited in scope, and a county development district's authority to undertake projects is so limited.

Second, the Code Construction Act provides that words and phrases are to be read in context and construed according to the rules of grammar and common usage; words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, are to be construed accordingly. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). The phrase "visitors and tourists" is used in several statutes that provide financing mechanisms for public improvements. In each case, the pertinent governmental entity is authorized to finance improvements related to the tourist and travel industry as opposed to general economic development. *See, e.g., id.* § 1371.001(2)(C) (Vernon 2000) (authorizing county to issue securities for "a public improvement . . . that serves the purpose of attracting visitors and tourists to the county, *including a civic center, auditorium, exhibition hall, coliseum, stadium, or parking area*") (emphasis added); *id.* § 1477.302(1) (authorizing certain counties to construct "a public improvement or facility to attract visitors or tourists to the county, including *a civic center, a civic center building, an auditorium, an exhibition hall, a coliseum, stadium, or other sports facility*") (emphasis added); TEX. LOC. GOV'T CODE ANN. § 306.032(b), (c) (Vernon 1999) (authorizing certain municipal park board to construct "*public parks, playgrounds,* or other facilities that serve the purpose of attracting visitors and tourists to the municipality" and to manage and control other facilities that serve that purpose, including "*parks*[,] . . . *civic centers, civic center buildings, auditoriums, exhibition halls, or coliseums*[,] *marinas or cruise ship terminal facilities*[,] . . . *hotels or motels*[,] . . . , *parking* . . . , *[and] trolley transportation systems*") (emphasis added).

We note in particular that chapters 351 and 352 of the Tax Code authorize cities and counties to collect hotel occupancy taxes, which may be used only to promote tourism and the convention and hotel industry. *See* TEX. TAX. CODE ANN. §§ 351.101 (Vernon Supp. 2000) (municipal hotel occupancy tax to be used "only to promote tourism and the convention and hotel industry"); 352.1015(e) (county hotel occupancy tax to be used "in a manner directly enhancing and promoting tourism and the convention and hotel industry"). Chapter 352 authorizes counties of a certain population to use the county hotel occupancy tax for "general promotion and tourist advertising of the county and its vicinity and conducting a solicitation program to attract conventions and visitors, any of which may be conducted by the county or through contracts with persons or organizations

selected by the county." *Id.* § 352.101(3). Chapter 383 uses almost identical language, authorizing a county development district "to provide for general promotion and tourist advertising of the district and its vicinity and to conduct a marketing program to attract visitors, any of which may be conducted by the district pursuant to contracts for professional services with persons or organizations selected by the district." TEX. LOC. GOV'T CODE ANN. § 383.061(c) (Vernon 1999). Clearly, these two provisions use the words "tourist" and "visitor" in the same way.

The Kaufman County Development District No. 1 brief relies on chapter 351 of the Tax Code's definition of the term "tourist" in section 351.001(7) as "an individual who travels from the individual's residence to a different municipality, county, state, or country for pleasure, recreation, education or culture," TEX. TAX CODE ANN. § 351.001(7) (Vernon Supp. 2000). The brief suggests that the term "visitor" must necessarily refer to people who travel for any other purposes. *See* KCDD Brief, *supra* note 2, at 18-21. We believe, however, that section 351.001 supports the opposite conclusion. Legislative intent is to be determined from the entire act and not simply from isolated portions of the act. *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex. 1998). Subsection (9) of section 351.001, which the brief appears to overlook, defines the phrases "'[v]isitor information center' or 'tourism information center'" as "a building or a portion of a building used to distribute or disseminate information to tourists," TEX. TAX CODE ANN. § 351.001(9) (Vernon Supp. 2000), indicating that the words "visitor" and "tourist" have much the same meaning.

In sum, based on chapter 351 of the Tax Code and the other statutes authorizing public improvements to attract visitors and tourists, we believe that the phrase "visitors and tourists" has acquired a technical meaning in public finance law of this state that denotes people who travel to a destination for recreation or pleasure as opposed to people who come and go from a location in the course of everyday activities. In light of the plain language of chapter 383 and this technical meaning of the phrase "visitors and tourists," we conclude that a county development district is limited to projects that will promote tourism in the county. Accordingly, we conclude that chapter 383 does not authorize a county development district to undertake a project that will not promote tourism in the county. Although we cannot exclude the possibility as a matter of law, it seems highly unlikely that a residential subdivision would promote tourism in the county. However, whether a particular project will promote tourism in the county is a question of fact for the reasonable determination of the county commissioners court in the first instance, subject to judicial review for abuse of discretion. This office, which does not find facts,[5] cannot resolve whether a particular project will promote tourism in the county or whether a commissioners court has abused its discretion in making that determination. *Cf.* Tex. Att'y Gen. LO-95-072, at 3 ("Although it seems unlikely that the construction of sewer facilities in a residential subdivision would promote or develop new or expanded business enterprises [within the meaning of the Development Corporation Act of 1979], we cannot exclude the possibility as a matter of law. Furthermore, a board's determination would be reviewed under an abuse of discretion standard. Whether the board abused

---

[5]*See* Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 ("[I])nvestigation and resolution of fact questions . . . cannot be done in the opinion process."); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual) determinations."); O-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer.").

its discretion would require the resolution of factual issues and therefore would be beyond the purview of the opinion process.").

## S U M M A R Y

A county development district created under chapter 383 of the Local Government Code is not authorized to levy ad valorem taxes. A county development district may undertake a project only if it is consistent with the purpose of chapter 383 – "providing incentives for the location and development of projects in certain counties to attract visitors and tourists." TEX. LOC. GOV'T CODE ANN. § 383.002 (Vernon 1999) (statement of legislative intent).

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee